## UTAH CONST. CO. v. STATE HIGHWAY COMMISSION OF WYOMING.

(District Court, D. Wyoming. December 4, 1926.)

No. 1547.

1. **States ⬤═191(1)—By creating a commission with authority to sue and be sued, state, as to such commission, waives its constitutional immunity from suit (Const. Amend. U. S. 11; Comp. St. Wyo. 1920, §§ 3025–3037).**

Where the Wyoming Legislature, by Comp. St. Wyo. 1920, §§ 3025–3037, created a state commission, with authority to sue and be sued, the state, as to suits against such commission, waives its immunity from suit under Const. Amend. U. S. 11.

2. **Contracts ⬤═324(1)—Action held one on contract and not on a quantum meruit.**

An action by a contractor for highway construction to recover extra expense incurred in performance of the contract due to a change in the plans and specifications by the engineer in charge is one on the contract and not an action on a quantum meruit.

3. **States ⬤═191(2)—Action on contract against state highway commission held one against the state.**

A state highway commission, created by Comp. St. Wyo. 1920, §§ 3025–3037, under a

constitutional provision authorizing the state to engage in the construction of roads, to be paid for from a fund created for the purpose though authorized to sue and be sued, is an agency of the state for the carrying out of a state function and the disbursement of public money, and an action against the commission on a contract made by it for road construction is in effect an action against the state.

4. Courts ⚖⚖307(1)—State is not citizen, within statutes conferring jurisdiction for diversity of citizenship.

Under the statutes giving federal courts jurisdiction of suits between citizens of different states, a state is not a citizen.

5. Courts ⚖⚖307(1)—Federal court held without jurisdiction of an action in which a state was in effect defendant, on the ground of diversity of citizenship.

A federal court is without jurisdiction of an action which is in effect one against a state, though the state may have waived its constitutional immunity from suit, where no federal question is involved and the only ground of jurisdiction alleged is diversity of citizenship.

At Law. Action by the Utah Construction Company against the State Highway Commission of Wyoming. On demurrers to petition and reply. Demurrers sustained, and petition dismissed.

W. L. Walls, of Cheyenne, Wyo., and Story & Crow, of Salt Lake City, Utah, for plaintiff.

D. J. Howell, Atty. Gen., Ray E. Lee, Marion A. Kline, and John Dillon, all of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge. This is an action in which the plaintiff, a citizen of the state of Utah, seeks to recover of the defendant damages growing out of a construction contract involving a state highway. The petition was originally met by a demurrer, which, after hearing was overruled, and an answer filed, followed by a reply thereto. The matter is again before the court upon a demurrer filed to the reply, as well as a general demurrer to the petition, which last demurrer, as did the one formerly overruled, challenges the juisdiction of this court, but upon a different ground. Whatever may be the legal formality by which the question is presented, whenever the lack of jurisdiction of the court is suggested, it becomes the court's duty to investigate tthe matter, and if jurisdiction is wanting to dismiss the cause, or if upon removal remand the same. Section 37, U. S. Judicial Code (Comp. St. § 1019).

[1] Under the demurrer which was overruled, the point suggested was that the court was without jurisdiction because the suit was against the state of Wyoming, and therefore in contravention of the Eleventh Amendment to the Constitution of the United States, forbidding the judicial power of the United States to extend to suits against the states by citizens of another state. In this respect the court ruled in effect that, inasmuch as the Legislature creating the state highway commission of Wyoming had by an act authorized it to sue and be sued in any court, then whether or not the suit was against the highway commission as a distinct entity or against the state itself was immaterial, because the state had by its affirmative act waived its immunity under the Eleventh Amendment, and citing as authority Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; Clark v. Barnard, 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed. 780. This court then entertained the view which has recently been expressed by the Eighth Circuit in the case of Hertz v. Knudson (C. C. A.) 6 F.(2d) 812, where at page 816 the court says:

"The Eleventh Amendment to the Constitution, which provides that 'the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state,' is not here involved. By this amendment a privilege is granted for the benefit of the state, which applies specifically to suits prosecuted against the state. It has been uniformly held under this amendment that a state cannot be made a defendant in a federal court against its consent, but that the privilege may be waived if the state sees fit voluntarily to submit itself to the jurisdiction."

Upon the presentation of this demurrer, however, it is suggested that, even though the state has waived its immunity, it still being insisted that the action is one against the state, the United States District Court has no jurisdiction of the subject-matter, and jurisdiction cannot be conferred by consent of the parties, or by consent of the state to be sued in the courts of the United States; the gist of the argument being that the jurisdiction here is wanting because the suit is based upon an amount in controversy in excess of the statutory limitation and the diversity of the citizenship of the parties, and that the diversity of citizenship is destroyed because of judicial holdings that the state is not a citizen.

Two points, therefore, press for determination in the present controversy: First, it now becomes necessary to determine whether or not the action is in effect one against the state; and, second, if so, whether or not this court has jurisdiction of the case.

In the determination of the first question, a brief analysis of the nature of the action and an examination of the law under which roads of the character in controversy are constructed would seem to throw some light upon the subject. The contract sued upon, entered into in June, 1922, was for the construction of a state highway in what is known as the Big Horn Canyon in this state, and called for such construction according to plans and specifications made by the state highway engineer. There was also a supplemental contract, calling for additional excavation upon the same basis of remuneration as the original contract. The petition sets forth in substance that, after the first plans and specifications were presented, they were subsequently changed by other engineers of the department in such a way that it made substantially a new route, which the plaintiff did not discover until near the completion of the contract, thereby causing the plaintiff to suffer additional and extraordinary expense in completing the project, which the plaintiff sues to recover.

[2] In a former hearing upon a general demurrer to the petition, this court held that the action was in its nature one upon a contract, and not an action upon quantum meruit, upon the strength of the following cases: Christie v. United States, 237 U. S. 234, 35 S. Ct. 565, 59 L. Ed. 933; United States v. Atlantic Dredging Co., 253 U. S. 1, 40 S. Ct. 423, 64 L. Ed. 735; United States v. Gibbons, 109 U. S. 200, 3 S. Ct. 117, 27 L. Ed. 906; United States v. Spearin, 248 U. S. 132, 39 S. Ct. 59, 63 L. Ed. 166. The contract itself by its caption recites that the agreement is between the state of Wyoming, acting through the state highway commission and the plaintiff, is executed by the state highway commission through its superintendent, and provides that the work shall be done under the direct supervision of the highway commission, subject to inspection and approval by the Secretary of Agriculture under the Act of July 11, 1916, thereby showing that the construction involved was under what is known as the Federal Aid Act (Comp. St. § 7477a et seq.).

[3] The law pertaining to the question is found in the Wyoming Constitution and statutes. In 1916 Wyoming adopted an amendment to her Constitution known as section 9 of article 16, which reads as follows:

"The provision of section 6 of article 16 of this Constitution prohibiting the state from engaging in any work of internal improvement unless authorized by a two-thirds vote of the people shall not apply to or affect the construction or improvement of public roads and highways; but the Legislature shall have power to provide for the construction and improvement of public roads and highways in whole or in part by the state, either directly or by extending aid to counties; and, notwithstanding said inhibition as to works of internal improvement, whenever grants of land or other property shall have been made to the state, especially dedicated by the grant to particular works of internal improvement, the state may carry on such particular works and shall devote thereto the avails of such grants, and may pledge or appropriate the revenues derived from such works in the aid of their completion."

Under this constitutional provision, in 1919 the Legislature adopted an act, now known as chapter 185 of the Wyoming Compiled Statutes of 1920, providing for the issuance of bonds for road-building purposes, and the same year passed an act authorizing the state to go into the road-building business, such act being known as chapter 186 of the same Compiled Statutes. The latter act by its terms provides, among other things, that a state highway department be created, to consist of the state highway commission and a state highway superintendent; that the commission shall consist of five state highway commissioners, who shall be appointed by the Governor by and with the consent of the Senate; that the commissioners shall qualify by taking the constitutional oath of office; that the commission shall maintain offices in the state capitol; that the commission shall have power to sue in the name of the "state highway commission of Wyoming," and may be sued in any court upon any contract executed by it; that the Attorney General shall be legal advisor of the commission; that the commission shall have an official seal, and that all records of its office certified under the hands of its secretary shall be received in any court; that the commission shall appoint a state highway superintendent, who shall take the constitutional oath of office upon qualifying; that said superintendent shall have complete charge of laying out and establishing highways; that the commission shall have authority to acquire rights of way by condemnation proceedings; that the work to be performed upon highways, except where the same is in co-operatioin with the Secretary of Agriculture, shall be performed at the expense of the state; that the commission shall have power to co-operate with counties in the construction of highways; that there be created a fund, to be known as the "state highway fund," in which the state treasurer shall place

all moneys received from any source for highway purposes, which shall be paid out only on vouchers approved by the state highway superintendent; that there is appropriated the sum of $300,000, made available for road building on and after March 1, 1920, and all balances remaining of the fund shall not revert to the general fund, but be subject to subsequent expenditure; and that the overhead expense in connection with the administration shall not exceed 15 per cent. of the total amount expended each year.

Is the action upon a contract, such as here outlined under the Constitution and statutes referred to, one in effect against the state of Wyoming, or one against a separate entity created by the state, so as to take it out of the class of cases held to be against the state? The Supreme Court of Wyoming, in Hjorth Royalty Co. v. Trustees of the University, 30 Wyo. 309, 222 P. 9, it being a suit to quiet title to lands, held that the state was the real party in interest, that the suit in effect was one against the state, and that, in the absence of legislative consent to suit, it could not be maintained.

In a recent decision in the case of Fidelity & Deposit Co. of Maryland v. Trustees of the University of Wyoming (No. 1658) 15 F.(2d) ——, not yet reported, this court held that that case was in effect a suit against the state, which could not be maintained, for the reasons that the state, although designating them as a corporate body, had not given the trustees of the University authority to sue or be sued, and further that the relief sought was simply to direct and compel the trustees under a construction contract, to carry out the functions delegated to them by statute, and that the case therefore fell within a class which made it in effect a suit against the state, as distinguished from a class where state officials were presuming or threatening to perform acts in violation of constitutional rights, in which latter class the courts have held that such suits are not against the state, but against individuals who, although state officials, purport to do unlawful things. This distinction is clearly drawn in the cases there cited, and particularly summarized in the case of Pennoyer v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699, 35 L. Ed. 363.

Here a similar situation exists in that the cause of action is upon a contract which would place it in the first class of cases there mentioned (for, if not upon the contract, the action is not in our opinion well founded), but with the difference between the two that the Legislature here has given its agency the power to sue and be sued, not, however, specifically designating it as a corporate body. Does this distinction relieve the suit of its character of being one against the state? In the early decisions of the Supreme Court it was held that the question of the suit being one against a state was to be determined by the fact as to whether or not the state was a party to the record; but this rule has long since been abrogated through a series of decisions culminating in the comparatively recent decision of Ex parte State of New York, 256 U. S. 490, where at page 500, 41 S. Ct. 588, 590 (65 L. Ed. 1057), the court says:

"As to what is to be deemed a suit against a state, the early suggestion that the inhibition might be confined to those in which the state was a party to the record (Osborn v. United States Bank, 9 Wheat. 738, 846, 850, 857 [6 L. Ed. 204]), has long since been abandoned, and it is now established that the question is to be determined, not by the mere names of the titular parties, but by the essential nature and effect of the proceeding, as it appears from the entire record (Louisiana v. Jumel, 107 U. S. 711, 719, 720, 723, 727, 728 [2 S. Ct. 128, 27 L. Ed. 448]; Hagood v. Southern, 117 U. S. 52, 67, et seq. [6 S. Ct. 608, 29 L. Ed. 805]; In re Ayers, 123 U. S. 443, 487–492 [8 S. Ct. 164, 31 L. Ed. 216]; Pennoyer v. McConnaughy, 140 U. S. 1, 10, et seq. [11 S. Ct. 699, 35 L. Ed. 363]; Smith v. Reeves, 178 U. S. 436, 438–440 [20 S. Ct. 919, 44 L. Ed. 1140]; Murray v. Wilson Distilling Co., 213 U. S. 151, 168–170 [29 S. Ct. 458, 53 L. Ed. 742]; Lankford v. Platte Iron Works Co., 235 U. S. 461, 469 [35 S. Ct. 173, 59 L. Ed. 316])."

In Hopkins v. College, 221 U. S. 636, at page 642, 31 S. Ct. 654, 656, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243, the court says:

"And, looking through form to substance, the Eleventh Amendment has been held to apply, not only where the state is actually named as a party defendant on the record, but where the proceeding, though nominally against an officer, is really against the state, or is one to which it is an indispensable party. No suit, therefore, can be maintained against a public officer which seeks to compel him to exercise the state's power of taxation, or to pay out its money in his possession on the state's obligations, or to execute a contract, or to do any affirmative act which affects the state's political or property rights."

In the case of Poindexter v. Greenhow, 114 U. S. 270, the court at page 287 (5 S. Ct. 903, 912 [29 L. Ed. 185]), uses the following language:

"It is also true that the question whether a suit is within the prohibition of the Elev-

enth Amendment is not always determined by reference to the nominal parties on the record. The provision is to be subtantially applied in furtherance of its intention, and not to be evaded by technical and trivial subtleties."

In the light of this authority, in analyzing the issue here, we find that the highway construction over which the controversy arises was initiated by a constitutional amendment, which authorized the state of Wyoming to go into the road-building business. The state thereupon proceeded to carry out this new function by creating an agency through which it might efficiently act. It provided for raising money by bonding itself and taxing its inhabitants for the purpose, and providing that such money, as well as that received from other sources, should be accumulated in the hands of its state treasurer; that its chief legal adviser should be the legal adviser of its agency in the premises; that such agency should maintain its office in the state capitol; that the state might enter into agreements with the United States for the building of roads, under an act of Congress, which type of road was here under construction; and directed the manner in which the funds so raised by it should be disbursed, as well as the other incidents which are incorporated heretofore in an analysis of the Wyoming statute.

It is difficult to conceive how any function could be more clearly regarded as an act of the state itself than is the building of state highways in Wyoming. It would therefore be equally clear that the state in the present instance was actually engaged in building the highway in controversy, were it not for the somewhat isolated factor that the state had given its agency for road-building purposes the authority to sue and be sued. As to the effect of this provision, counsel argue that it is a definite act, which severs the agency from the state itself and makes it a distinct entity. In support of this they cite some authority, largely by state courts, but two cases by the Supreme Court of the United States; one being Hancock v. Louisville Railroad Co., 145 U. S. 409, 12 S. Ct. 969, 36 L. Ed. 755, where by an act of the state Legislature, authorizing a portion of a county within a limited district to issue bonds for building a railroad, it was held that the act of the state thereby created a quasi corporation, which was capable of suing and being sued in the courts. It is clear, however, that this was not an entity created by the state for the purpose of carrying into effect purely state functions, but was rather an authority of the state to one of its designated areas to contribute to a commercial enterprise in which the state as such had no interest.

In the case of Port of Seattle v. Oregon & W. R. Co., 255 U. S. 56, 41 S. Ct. 237, 65 L. Ed. 500, the Supreme Court held that the suit was not against the state, for the reason solely that the Port of Seattle had been constituted a municipal corporation by the state and that it as such was the real party in interest, even though the state itself had some interest in the controversy. We have found no cases, and none has been called to our attention (except, perhaps, Bromwell Brush Co. v. State Board, 279 F. 440, a District Court decision, which seems out of harmony with the later Supreme Court decisions), where an agency of the state engaged solely in carrying out purely state functions, although given the power to sue and be sued, has been recognized by the federal courts as an entity distinct from the state itself for jurisdictional purposes. As a matter of fact, the consent to suit provision itself suggests state agency, as a distinct entity, whether under special or general laws, would naturally have the ordinary rights of that character running to corporations or quasi corporations.

We feel, therefore, although it may be a close question, that in the face of the contract, the Constitution, and the statutes, which reflect the real situation of the contract work being performed under state regulation and control by one of its designated agencies for the benefit of the state and its citizens generally, and paid for very largely by the people of the state through bond issues and taxation, that a simple clause which permits a state agency to sue or be sued would be too narrow a thread upon which to hang the court's determination that the principal party in interest in this suit is not the state, and that a more reasonable construction of this suability provision of the statute would be that the state had consented that it might be sued through its agency, the state highway commission, thereby probably giving the state courts jurisdiction of the suit.

This process of reasoning necessarily leads to the conclusion that the suit here is in effect one against the state of Wyoming, and now the second question heretofore suggested presents itself, as to whether or not, being a suit against the state, this court has jurisdiction of it. This angle of the question counsel for the defendants have not discussed, either in their oral argument or in

their trial briefs, and, were the matter before an appellate court, the point may well have been considered as abandoned. However, for the purposes of this decision, it cannot be entirely ignored by the court.

[4] As before stated, this action, so far as the jurisdiction of this court is concerned, is based upon the necessary amount being in controversy and the diversity of citizenship of the parties, but as stated in Postal Telegraph Cable Co. v. Alabama, 155 U. S. 482, at page 487, 15 S. Ct. 192, 194 (39 L. Ed. 231):

"A state is not a citizen. And under the Judiciary Acts of the United States it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states, and that the Circuit Court of the United States has no jurisdiction of it, unless it arises under the Constitution, laws, or treaties of the United States."

This doctrine is again reasserted as a basis of the Supreme Court's decision in the case of Minnesota v. Northern Securities, 194 U. S. 48, at page 63, 24 S. Ct. 598, 48 L. Ed. 870. By the force of these decisions the necessary element of diversity of citizenship is swept out of this case, because with a citizen of another state as the plaintiff, and the state itself in effect as the defendant, the state of Wyoming is not a citizen. Nor does the evident waiving of immunity by the state under the Eleventh Amendment, and thereby consenting that it may be sued through its agency in the premises, seem to relieve the situation. The many cases in the books involving the jurisdiction of the United States courts over cases in which a state has been a party do not seem to be analogous in their facts with the case at bar, although it may be admitted that freely running passages in some of the opinions might seem to hold that a state, by waiving its immunity under the Eleventh Amendment, could be sued in the federal district courts.

[5] A cursory reading of the language in Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140, and Clark v. Barnard, 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed. 780, might seem to indicate as much. This language probably refers to cases in which the federal courts have jurisdiction of the subject-matter. However, it is certain that jurisdiction cannot be sustained upon the ground of diversity of citizenship, which is the jurisdictional ground named in the petition, in the view which this court takes of the nature of this suit. If it were to be sustained, therefore, upon any other jurisdictional ground, it must needs be by virtue of some clause found in the statute defining this court's jurisdiction, as of course this is not a court of general, but of limited, jurisdiction, having only such jurisdiction as is specifically delegated to it by Congress.

Section 24 of the Judicial Code (Comp. St. § 991) purports to specify the jurisdiction of the United States District Courts. While this section is subdivided into 25 subsections, the provision of subsection 1 would seem to apply only to the character of a controversy which is here before the court. It is there provided that in suits involving more than $3,000, exclusive of interest and costs, the District Court has jurisdiction under three separate and distinct situations, to wit: Where such a suit "(a) arises under the Constitution or laws of the United States, or treaties made * * * under their authority; or (b) is between citizens of different states; or (c) is between citizens of a state and foreign states, citizens, or subjects."

The situation here does not satisfy any of these requirements, considering the determination of the court that there is no diversity of citizenship in this case. If the cause involved a federal question under clause (a) above, the federal District Court might have jurisdiction where the state is a party. See Ames v. Kansas, 111 U. S. 449, 4 S. Ct. 437, 28 L. Ed. 482, and Postal Telegraph Co. v. Alabama, supra.

For the reasons stated, it must be held that the court has no jurisdiction of the case, and a final order and judgment may be entered, dismissing it at the cost of the plaintiff, and reserving to plaintiff its proper exceptions.