[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13942
Non-Argument Calendar
_____

D.C. Docket No. 0:14-cv-60268-JIC


THERMOSET CORPORATION,
a Florida corporation
f.k.a. Thermoset Roofing Corp.,

                                                    Plaintiff-Appellant,


versus


BUILDING MATERIALS CORP OF AMERICA,
a Delaware corporation
d.b.a. GAF Materials Corporation,
ROOFING SUPPLY GROUP ORLANDO LLC,
a Delaware limited liability company,

                                                    Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 2, 2017)

Before HULL, MARTIN, and EBEL,[*] Circuit Judges.

MARTIN, Circuit Judge:

Thermoset Corporation ("Thermoset"), a roofing contractor, brought this product liability action in Florida state court against Building Materials Corporation ("GAF") and Roofing Supply Group Orlando ("RSGO"), a manufacturer and a distributor of roofing materials (collectively, "the defendants"). GAF removed the case to federal court based on diversity jurisdiction, and the District Court granted summary judgment to the defendants. Thermoset appealed. Shortly afterwards, it became apparent that RSGO was not a diverse party at the time of removal. In light of this jurisdictional defect, Thermoset asks us to remand the entire case back to state court. After careful consideration, and with the benefit of oral argument, we vacate the District Court's summary judgment order and remand with instructions to send this case back to the state court for further proceedings.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. THERMOSET SUES GAF AND RSGO OVER MALFUNCTIONING ROOFING SYSTEM

Thermoset is a roofing contractor organized under Florida law with its principal place of business in Florida. In 2005, Thermoset entered into a "Master

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation.

Select Roofing Contractor Agreement" with GAF, a manufacturer of roofing products and systems incorporated in Delaware with a principal place of business in New Jersey.  This agreement enabled Thermoset to use GAF's products on various jobs, and over time, Thermoset developed a working relationship with GAF's representatives.

Thermoset and its affiliates were hired to install a roof system at Lynden Pindling International Airport in Nassau, Bahamas.  The system had to satisfy certain project requirements because of the Bahamian climate.  It had to be able to withstand certain wind velocities and uplift pressures.  Thermoset asked GAF if it manufactured a roof system that fit these specifications.  Dario Miranda, GAF's senior commercial specialist, told Thermoset that GAF had something called the "TPO system" that met the requirements and used a water-based adhesive ("H2O adhesive").  Thermoset also discussed the TPO system and the project requirements with Bob Vitale, an employee of RSGO.  RSGO is a distributor of GAF roofing products organized as a limited liability company under Delaware law with a principal place of business in Texas.  Thermoset says it relied on recommendations from RSGO and GAF to buy roofing materials and components for the TPO system from RSGO.

Thermoset began work on the project in March 2010.  However, portions of the TPO system's outer membrane soon became detached from the insulation in

3

several places.  The same thing happened when Tropical Storm Nicole struck Nassau, even though those winds were weaker than the wind velocities that the roofing system was required by the specifications to withstand.  Thermoset notified GAF and RSGO of the TPO system's malfunction.  Although RSGO issued an $82,000 credit to Thermoset for return of the H2O adhesive and certain replacement materials, Thermoset says this amount didn't fully compensate for its damages.  Thus, it continued to make demands from GAF and RSGO for compensation and assistance with repairs, but to no avail.

Thermoset says it incurred losses upwards of $1 million.  To recover these losses, it filed suit in Florida state court against the defendants on December 31, 2013.  Thermoset made claims for breach of the implied warranty of merchantability; breach of implied warranty of fitness for a particular purpose; breach of express warranty; negligent misrepresentation; and violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–213.  On February 3, 2014, GAF removed the case to federal court.  Specifically, it invoked the District Court's diversity jurisdiction.  After the parties conducted discovery, the defendants jointly moved for summary judgment.  The District Court granted summary judgment to the defendants.  Thermoset appealed.

B. JURISDICTIONAL ISSUE

After Thermoset filed its notice of appeal, this Court noticed that the pleadings below did not sufficiently allege the citizenship of RSGO, as is required to invoke the District Court's diversity jurisdiction. See 28 U.S.C. § 1332(a). Specifically, because "a limited liability company is a citizen of any state of which a member of the company is a citizen," Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam), the pleadings were required (but failed) to provide the citizenship of each member of RSGO. Thus, we inquired of the parties how they thought this defect could and should be cured. See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1304 (11th Cir. 2011) (per curiam) ("We are obligated to raise concerns about the district court's subject matter jurisdiction sua sponte."). From the answers to the jurisdictional question, it became apparent that RSGO was in fact not diverse at the time of removal. One of its members was—like Thermoset—a Florida citizen.

## II. DISCUSSION

The threshold issue now before us is therefore whether we have diversity jurisdiction. Belleri v. United States, 712 F.3d 543, 547 (11th Cir. 2013) ("We may not consider the merits . . . unless and until we are assured of our subject matter jurisdiction."). The defendants admit RSGO was not a diverse party at the

time of removal.  However, they say both this Court and the District Court can properly exercise diversity jurisdiction over the entire case because RSGO is a nominal party whose citizenship should not be considered for jurisdictional purposes.  In the alternative, the defendants argue we should dismiss the non-diverse RSGO under Federal Rule of Civil Procedure 21 in order to preserve diversity jurisdiction over the rest of the case.  For its part, Thermoset says RSGO is a real party in interest whose citizenship cannot be ignored.  Thermoset also urges us not to use our Rule 21 powers to dismiss RSGO, but to instead vacate the District Court's summary judgment order for lack of subject-matter jurisdiction and remand the entire case back to Florida state court.  We conclude that (1) RSGO is a real party in interest and not a nominal party; and (2) dismissal of RSGO pursuant to Rule 21 would not be proper.  We discuss each conclusion in turn.

A. RSGO IS NOT A NOMINAL PARTY

Federal courts are courts of limited subject-matter jurisdiction.  See PTA–FLA, Inc. v. ZTE USA, Inc., 844 F.3d 1299, 1305 (11th Cir. 2016).  A district court can hear a case only if it has "at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to

28 U.S.C. § 1332(a)."  Id. (quotation omitted).  GAF invoked the District Court's diversity jurisdiction here, and it is clear that neither of the other types apply.

In order for a district court to properly exercise diversity jurisdiction over a case, the action must be between "citizens of different States."  28 U.S.C. § 1332(a)(1).  Also, "diversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal."  PTA–FLA, 844 F.3d at 1306.  The defendants now acknowledge that RSGO was, like Thermoset, a citizen of Florida at the time of removal.  Thus, it appears the District Court did not have diversity jurisdiction over this action.

Yet we are mindful that federal courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461, 100 S. Ct. 1779, 1782 (1980).  So if RSGO is a nominal party, then this Court and the District Court can ignore its citizenship and exercise diversity jurisdiction over the entire action.

This Court has acknowledged "there is no bright-line rule" for distinguishing between real and nominal parties.  Payroll Mgmt., Inc. v. Lexington Ins. Co., 566 F. App'x 796, 799 (11th Cir. 2014) (per curiam) (unpublished).  In Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, 427

F.2d 325 (5th Cir. 1970),[1] we defined "nominal or formal parties" as those that are "neither necessary nor indispensable" to the action. Id. at 327. We also said "[t]he ultimate test" for whether a defendant is nominal is "whether in the absence of the defendant, the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff." Id. (quotation omitted and alteration adopted).

Under this test, RSGO is more than just a nominal defendant. At the time this case was removed to federal court, RSGO's absence would have put Thermoset at risk of receiving inadequate relief. Florida is not a joint-and-several liability state. Under Florida law, a defendant in a product liability action (like GAF) is liable only for the amount of damages proportional to its percentage of fault. See Fla. Stat. § 768.81(3). Thus, if RSGO were not at the trial, GAF could argue that RSGO caused the problems, so GAF was not at fault for Thermoset's damages. If the factfinder agreed, GAF would pay nothing, leaving Thermoset with incomplete relief. This demonstrates a significant risk that a final judgment in RSGO's absence would be "unfair or inequitable" to Thermoset. Tri-Cities Newspapers, 427 F.2d at 327.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

8

The defendants argue RSGO may be categorized as a nominal party because GAF agreed to defend and fully indemnify RSGO for any losses resulting from an adverse judgment.  But if RSGO is not present at trial, so as to have its name appear on the verdict form, the jury would have no opportunity to assess its liability in the first place.  Without such a jury finding, Thermoset could not be sure of identifying, much less recovering, RSGO's share of any damages owed in this action.  Thus with RSGO absent from the case, a promise of indemnification by GAF does nothing to ensure adequate relief for Thermoset.

The defendants also say RSGO is a nominal party because it played "no active role in the alleged warranty, design, or manufacture" of the roof system, and was merely a middleman.  We take this as an argument that RSGO's absence could not have put Thermoset at risk of receiving incomplete relief because RSGO could not have been held liable for any portion of Thermoset's damages as a mere middleman.  However, Thermoset has pointed to evidence indicating that RSGO was more than a just a go-between insofar as Robert Vitale, an employee of RSGO, made roofing material recommendations to Thermoset.[2]  And even if RSGO was just a middleman that sold the roofing materials to Thermoset, it could

---

[2] The defendants admit in their answer to the jurisdictional question that Thermoset discussed the purchase of roofing materials for the project with Mr. Vitale, but they allege for the first time on appeal that Mr. Vitale was an employee of Roofing Supply Group, LLC, not RSGO. Even though this allegation, if true, might absolve RSGO of liability under some of Thermoset's theories, neither defendant made this allegation in the District Court.  Beyond that, even accepting this premise as true, RSGO could still be held liable under Thermoset's implied warranty theories.

still be liable for some portion of Thermoset's damages under Thermoset's implied warranty theories.  For example, under Florida law, a warranty that a seller's goods are merchantable (fit for their ordinary purposes) is implied if the seller "is a merchant with respect to goods of that kind."  Fla. Stat. § 672.314.  Thus, a seller can breach this implied warranty by doing nothing more than being a merchant of certain products and selling those products.  As a result, RSGO cannot demonstrate that its absence would not have created any risk of inadequate relief.

B.  DISMISSING RSGO TO PRESERVE JURISDICTION WOULD NOT BE PROPER

Because RSGO is a real party in interest, its non-diverse citizenship destroys federal jurisdiction for this case.  However, Federal Rule of Civil Procedure 21 gives us the power to dismiss a non-diverse party like RSGO in order to preserve jurisdiction over the rest of the case and "rescue an otherwise valid judgment." Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1343 (11th Cir. 2011); accord Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832–37, 109 S. Ct. 2218, 2222–25 (2011).  The Supreme Court has instructed us to use this power "sparingly."  Newman-Green, 490 U.S. at 837, 109 S. Ct. at 2225. Specifically, we can dismiss a non-diverse party "only if no party will be prejudiced by the dismissal."  Molinos, 633 F.3d at 1343.  Under Newman-Green, this prejudice determination requires us to look at two factors.  See Molinos, 633 F.3d at 1343.  First, we must decide whether the non-diverse party is

10

"indispensable" under Federal Rule of Civil Procedure 19.  Id.  "If the [non-diverse] party is indispensable, then we must dismiss the entire case [for lack of subject-matter jurisdiction]"—we cannot dismiss the non-diverse party and keep the rest of the case.  Id.  Second, if the non-diverse party is not indispensable, "we must inquire whether the presence of the non-diverse party provided the other side with a tactical advantage in the litigation."  Id. at 1344.

Rule 19 establishes a two-step inquiry for deciding whether RSGO is indispensable.  First, we must consider whether RSGO is a "required party" under clause (a)(1).  If RSGO is "required," then we move to a second step and ask whether "in equity and good conscience, the action should proceed" without RSGO under subsection (b).  And if we conclude that the case should not continue without RSGO, then RSGO is an indispensable party and we must dismiss the entire case.  See Molinos, 633 F.3d at 1343.

Under Rule 19's two-step inquiry, we conclude RSGO is an indispensable party.  First, RSGO is a "required party" under clause (a)(1) because "the court cannot accord complete relief among existing parties" in RSGO's absence.  Fed. R. Civ. P. 19(a)(1)(A).  As we described above, RSGO's absence would put Thermoset at risk of receiving incomplete relief because Florida is not a joint-and-several liability state.  There are also other plausible ways in which RSGO's absence could prevent Thermoset from receiving complete relief (or any relief at

11

all).  For example, a jury might find that no implied warranties existed between GAF and Thermoset because there was no privity between them.[3]  If so, the only entity from which Thermoset could recover damages is RSGO.  Beyond that, if we dismiss RSGO, the only way Thermoset could ensure itself complete relief would be by bringing another action against RSGO in state court over the same injury.  But clause (a)(1) of Rule 19 was designed to protect not only the interests of the parties, but also the interests of "the public in avoiding repeated lawsuits on the same essential subject matter."  Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment.  In light of both the text and the purpose of clause (a)(1), RSGO is a required party.

Second, under subsection (b) of Rule 19, we cannot conclude "in equity and good conscience" that the suit should continue without RSGO.  Subsection (b) instructs us to consider four factors to make this determination: (1) the extent to which a judgment rendered in RSGO's absence might prejudice RSGO or the other parties; (2) "the extent to which any prejudice could be lessened or avoided by" "protective provisions in the judgment," "shaping the relief," or "other measures"; (3) whether a judgment rendered in [RSGO's] absence would be adequate; and (4) whether Thermoset would have an adequate remedy if we dismissed the entire case.  Fed. R. Civ. P. 19(b)(1)–(4).  These factors "are not intended to exclude

---

[3] Indeed, GAF made exactly this argument below in both its motion to dismiss and its response to Thermoset's motion for summary judgment.

12

other considerations which may be applicable in particular situations," so we may incorporate other factors into our analysis if they are relevant. Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment. We will consider each of these factors, although not in order.

The third factor listed in subsection (b) (whether a judgment rendered in RSGO's absence would be adequate) closely parallels the "required party" test in clause (a)(1) (whether such a judgment can accord complete relief among existing parties). Thus, the "required party" analysis applies here: RSGO's absence would create a significant risk of inadequate relief for Thermoset because (1) Florida is not a joint-and-several liability state; and (2) there are other plausible scenarios in which RSGO's absence from this action could prevent Thermoset from recovering all of its lawful damages. The third subsection (b) factor therefore weighs against continuing this action without RSGO as a party.

The second subsection (b) factor (whether there are any available measures for lessening or avoiding the prejudicial effects of rendering a judgment in RSGO's absence) "meshes" with the third factor. Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment. The defendants do not identify any measures that any party or the court could take to mitigate the risk of inadequate relief that RSGO's absence would create. As we have explained, GAF's indemnification agreement with RSGO would not lessen this risk. This factor

13

therefore also militates against finding that this case can and should proceed without RSGO.

In contrast, the first factor in subsection (b) (the extent to which a judgment rendered in RSGO's absence might prejudice RSGO or the existing parties) does not weigh against dismissing RSGO to retain jurisdiction over the rest of the case. This factor considers whether RSGO would be adversely affected if it were dismissed from the action, and whether a judgment rendered in RSGO's absence would have collateral consequences on GAF or Thermoset. Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment. For this factor, neither Thermoset nor the defendants argue that dismissing RSGO would prejudice RSGO or have adverse collateral consequences on GAF or Thermoset. This factor therefore bears little weight in our decision.

The fourth and last subsection (b) factor strongly weighs against proceeding without RSGO. This factor asks whether Thermoset would have an adequate remedy if we dismissed the entire action. Upon our dismissal of the case, Thermoset could continue its action against both GAF and RSGO in state court (which is where it initially filed the case before GAF removed it to federal court). Because RSGO would be a party to that action, Thermoset would not be at risk of receiving incomplete relief and would therefore have an adequate remedy. The fact that Thermoset would have an adequate remedy in state court points in favor

of dismissing the entire action instead of continuing it in federal court without RSGO as a party.

One more factor that weighs against dismissing RSGO to preserve jurisdiction over the rest of the action is the fact that GAF invoked the District Court's diversity jurisdiction. Had Thermoset initiated its action in federal district court, we might have reason to think that sending the entire case back to state court would unfairly benefit Thermoset and conflict with "equity and good conscience." Fed. R. Civ. P. 19(b). But this is not what happened here. GAF removed this case from state court to federal court. This meant it was GAF's burden to prove diversity jurisdiction. See Molinos, 633 F.3d at 1340. Allowing this action to continue without RSGO would therefore unfairly reward GAF for the jurisdictional defect it created and should have known about all along.

The defendants raise another equitable consideration to argue against dismissal of the entire action. This is, of course, the fact that this case has already been litigated to a final judgment. In support, they draw attention to the Supreme Court's statement that "[o]nce a diversity case has been tried in federal court . . . considerations of finality, efficiency, and economy become overwhelming." Caterpillar Inc. v. Lewis, 519 U.S. 61, 75, 117 S. Ct. 467, 476 (1996). However, unlike in Caterpillar, this case has not yet gone to trial, so "considerations of finality, efficiency, and economy" are not yet "overwhelming." See id. Also, the

15

defendants conceded at oral argument that at least some of the written discovery and deposition testimony obtained in the course of these federal proceedings could be reused in state court if we dismiss the entire case from federal court. See Fla. Stat. § 90.803(22) (providing an exception to hearsay for former testimony); Fla. R. Civ. P. 1.330. Thus, Florida law would allow the parties to mitigate a portion of the waste created by remanding the case back to state court. Finally, we are mindful that dismissing RSGO would create inefficiency in any event because Thermoset would respond to RSGO's dismissal by suing RSGO over the same subject matter in state court. On this record, the fact that this case has already been litigated to summary judgment does not convince us to continue this action in federal court without RSGO as a party.

### III.    CONCLUSION

Because RSGO is not a nominal party, its non-diverse citizenship cannot be ignored for jurisdictional purposes. And because RSGO is an indispensable party under Rule 19, we cannot preserve jurisdiction over the rest of the case by dismissing RSGO. As a result, we vacate the District Court's summary judgment order and send this case back to the District Court with instructions to remand it to the Florida state court for further proceedings.

**VACATED AND REMANDED.**