[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13956
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-00456-WS-N

MICHAEL HENRY SMITH,

Plaintiff-Appellant,

versus

COMCAST CORPORATION,
HELMSMAN MANAGEMENT SERVICES, LLC,
COMCAST CABLE COMMUNICATIONS, LLC,
COMCAST CORPORATION MOBILE ALABAMA,
JOY HOWARD,
Comcast Dedicated Claim Specialist, II,
CM Helmsman Management Services,
LIBERTY MUTUAL INSURANCE COMPANY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 11, 2019)

Before WILLIAM PRYOR, MARTIN, and GRANT, Circuit Judges.

PER CURIAM:

Michael Smith, proceeding pro se, appeals the district court's dismissal with prejudice of his complaint against several named defendants and two fictitiously named defendants.  On appeal, Smith argues that removing his case to the district court was improper because the fictitiously named defendants destroyed complete diversity, as would be shown by required discovery.  Finding no error on this, the only issue Smith has raised, we affirm.

I.

This case began with a routine cable installation.  According to Smith's allegations, a pair of Comcast technicians came to his home to install equipment for him to use Comcast's phone and internet services.  While there, the technicians permanently damaged the ethernet port of Smith's laptop.  Smith then reported the damage to Comcast and complained about other issues, including problems with the billing of his account.

As Smith sees it, his complaints inspired Comcast to send two area supervisors to his home "to physically intimidate [him] into withdrawing [his] complaints."  Smith alleged that these two men "beat" on his door "loudly," "demanded that [he] step outside," assumed "threatening postures," "flanked" him, and "spoke to [him] in a coarse fashion."

2

Smith, an Alabama citizen, filed suit in Alabama State court for intentional infliction of emotional distress and fraudulent billing, among other claims.  Smith's complaint fictitiously named the area supervisors as "Number One," described as a "white male with grey hair, a long mustache and a mother of pearl shark's tooth ear[r]ing," and "Number Two," described as a "white male with dark hair and clean shaven."  Smith's complaint also named the following defendants: Comcast Corporation; Comcast Cable Communications, LLC; Helmsman Management Services, LLC; Liberty Mutual Insurance Company; Joy Howard; Brian Roberts; Xfinity, Inc.; and Comcast Corporation Mobile Alabama.  Smith sought $5,000,000 in damages.

Under 28 U.S.C. § 1441(b), the defendants removed the case to federal court based on diversity of citizenship.  Smith objected, but the district court found that it had diversity jurisdiction.  Specifically, based on the defendants' declarations, the court found that 1) Xfinity, Inc. and Comcast Corporations Mobile Alabama did not exist, 2) the fictitiously named defendants were irrelevant to diversity jurisdiction, and 3) the other named defendants were completely diverse.

Later, the district court dismissed Smith's complaint without prejudice, prompting Smith to file an amended complaint (with substantially similar allegations).  After amending his complaint, Smith browsed LinkedIn and found Paul Douglas, a man Smith believed to be the fictitiously named defendant

3

Number One.  Based on this information, Smith moved to amend his complaint a second time "to correct the name" of defendant Number One by naming Douglas as a party.  The district court denied Smith's motion to amend, and in a series of orders, the court dismissed claims against each defendant for failure to state a claim.

Next, Smith sought to challenge the final judgment in the district court.  His motion, however, contained no briefing, nor did Smith submit briefing prior to the district court's deadline for doing so.  Accordingly, the court denied Smith's motion.  Smith appeals.

## II.

### A.

Before turning to the issue Smith raises on appeal, we must address the threshold issue of our own jurisdiction.  The defendants contend that our jurisdiction is limited to the district court's post-judgment orders because Smith's notice of appeal specifically designated only those orders.  We are not persuaded.

Federal Rule of Appellate Procedure 3(c)(1)(B) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed."  This Court "will not expand" a notice of appeal "to include judgments and orders not specified unless the overriding intent to appeal these orders is readily apparent on the face of the notice."  *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1528 (11th Cir.

4

1987).  That said, we liberally construe the notice, at least when any "defect . . . 'did not mislead or prejudice the respondent.'" *Nichols v. Alabama State Bar*, 815 F.3d 726, 730 (11th Cir. 2016) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962)).  In that vein, we have long been "committed to the more liberal rule that, where it is obvious that the overriding intent was effectively to appeal, we are justified in treating the appeal as from the final judgment." *United States v. Stromberg*, 227 F.2d 903, 904 (5th Cir. 1955).  And an "appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment." *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989).

Here, the title of Smith's notice specifies that he appeals "all of the orders dismissing this action," showing his overriding intent to appeal effectively.  As recognized by the district court's docket, Smith appeals from the final judgment— the quintessential order "dismissing this action."  We therefore have jurisdiction to consider non-final orders, including the order finding jurisdiction and orders denying discovery, that are steps toward the final judgment "rather than being separate from that progression."  16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3949.4 (4th ed. 2008) ("A notice of appeal that names the final judgment suffices to support review of all earlier orders that merge in the final judgment . . . at least if the earlier orders are part of the progression that led up to the judgment rather than being separate from that progression.").  In any event, the

5

defendants are "not prejudiced in the least" by our consideration of Smith's removal arguments because the removal "issue has been fully briefed by both parties." *See KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1260 (11th Cir. 2006).

Besides, "because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction," we not only *can* consider the district court's subject-matter jurisdiction but also *should* "raise the question . . . at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

### B.

Smith argues that removal was improper because the defendants knew or should have known that the fictitiously named defendants were citizens of Alabama, his own State of citizenship. Relatedly, he argues that required discovery would reveal the parties' identities and thus show that removal was improper. We review de novo whether the district court had subject-matter jurisdiction following removal. *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 780–81 (11th Cir. 2005). We review the district court's denial of discovery for abuse of discretion. *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014).

A defendant may remove a case from state court to federal court if the federal court has original jurisdiction over the case. 28 U.S.C. § 1441(a). District

6

courts have original, diversity-based jurisdiction over a civil action when 1) the amount in controversy "exceeds the sum or value of $75,000" and 2) each plaintiff is a citizen of a different state from each defendant. *Id.* § 1332(a). A removal case based on diversity jurisdiction must be remanded to state court if the parties are not completely diverse. *See Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "[T]he burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (citation omitted).

The parties do not contest that this case meets the amount-in-controversy requirement because the complaint demands damages of $5,000,000. And the district court properly found complete diversity between Smith and the named, existing defendants. Still, Smith argues that the fictitiously named defendants destroyed complete diversity.

The text of the removal statute forecloses Smith's arguments: "In determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Even if "the fictitious defendants were likely" not diverse, their citizenship must "be disregarded for purposes of diversity jurisdiction." *Walker v. CSX Transp. Inc.*, 650 F.3d 1392, 1395 n.11 (11th Cir. 2011). And for a removed case, "diversity jurisdiction is determined . . . at the time

7

of removal." *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (citation omitted).

Under these legal rules, the district court rightly "disregarded" the citizenship of the fictitiously named defendants when it assessed its jurisdiction "at the time of removal." For removal purposes, the law does not care whether the named defendants knew the citizenship and true names of the fictitiously named defendants. After all, even when the fictitiously named defendants were "likely" not diverse, we have "disregarded" their citizenship. And for a similar reason, the district court did not abuse its discretion by rejecting discovery on the removal issue: when assessing removal, the citizenship of fictitiously named defendants must be "disregarded," not discovered.

Smith responds that he so precisely described the fictitiously named defendants that their fictitious names are surplusage. In so arguing, Smith apparently relies on our fictitious-party-pleading rules. Our caselaw generally forbids fictitious-party pleading—that is, claims against fictitious or non-existent parties are usually dismissed. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). We have, however, "created a limited exception to this

8

rule when the plaintiff's description of the defendant is so specific as to" make the fictitious name, "at the very worst, surplusage." *Id.* (citation omitted).[1]

We have never held that this pleading-based exception applies to the removal statute. Such a holding would seem inconsistent with the removal statute's text—which appears to direct courts to categorically disregard "the citizenship of defendants sued under fictitious names," regardless of how specifically those defendants are described.

But even if the exception applied, Smith has not described the fictitiously named defendants with sufficient precision to fit within our "limited exception." To be sure, we have allowed suit against a fictitious defendant described as "Chief Deputy of the Jefferson County Jail John Doe," but that is only because the description identified the *one* "person in charge of the Jefferson County Jail." *Dean v. Barber*, 951 F.2d 1210, 1215–16 & n.6 (11th Cir. 1992). But in *Richardson* we upheld a district court's dismissal of claims against the vaguely identified "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute." 598 F.3d at 738. That description, we explained, "was insufficient to identify the defendant among the many guards employed at CCI." *Id.*

---

[1] Smith raised this argument below but not on appeal. We consider the argument as part of our independent duty to assess subject-matter jurisdiction.

9

So too here.  Unlike naming the person in charge of a jail, Smith's description does not necessarily pick out one Comcast employee.  He identifies them as area supervisors, but that is like describing them as prison guards.  He also uses vague, widely-shared characteristics by describing the defendants as white males.  His other depictions—shaven or unshaven face, hair color, and jewelry usage—may well change from day to day.  None of these descriptions, even taken together, are specific enough.

Nor is Smith's argument advanced by his citations to the Class Action Fairness Act of 2005 (CAFA) and *Dart Cherokee Basin Operating Co., LLC v. Owens*.  CAFA has no bearing on this non-class action case.  And in *Dart*, the Supreme Court held that a defendant need only plausibly allege that the case meets the amount-in-controversy requirement, a requirement that is not at issue here. *See* 135 S. Ct. 547, 551–54 (2014).  Thus, the district court did not err in finding that it had subject-matter jurisdiction; removal was proper.

## C.

We do not consider here the issues that Smith has abandoned.  "[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  This holds true for pro se litigants.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir.

10

2008).  And an appellant who "makes only passing references" to an issue, "without supporting arguments and authority," has abandoned the issue.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).  When an appellant abandons a challenge to the district court's grounds for dismissal, "it follows that the judgment is due to be affirmed."  *Id.* at 680.

Smith did not offer any argument about the denial of his motion to amend, the dismissal of his complaint for failure to state a claim, or the denial of his post-judgment motions.  Thus, he has abandoned those issues, and we do not address the remainder of the parties' arguments.

### III.

The district court's final judgment and post-judgment orders are **AFFIRMED.**

11