Larry McGHEE, Plaintiff,

v.

CITIMORTGAGE, INC., Defendant.

Case No. 11–13665.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 19, 2011.

Christopher Jason Cardasis, William Orlow Assoc., Corey M. Carpenter, Orlow and Cardasis, Pleasant Ridge, MI, for Plaintiff.

Kathryn J. Miller, Dykema Gossett, Ann Arbor, MI, Nasseem S. Ramin, Dykema Gossett, Detroit, MI, for Defendant.

### *OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND*

DAVID M. LAWSON, District Judge.

On August 22, 2011, the defendant removed this case from the Wayne County, Michigan circuit court, asserting that this Court had subject matter jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332(a). The plaintiff seeks to set aside a foreclosure sale, void a sheriff's deed, and quiet title to the residential property that is the subject of this litigation. The property was sold at a foreclosure sale on February 2, 2011. Defendant Citimortgage, Inc., the assignee of the

original note and mortgage, purchased the property at the sheriff's sale for $86,774.37, which was the amount outstanding on the defaulted loan plus attorney's fees, late charges, and interest.

On September 21, 2011, the plaintiff filed a motion to remand the case to state court. He argues that the Court has no subject matter jurisdiction because the amount in controversy, which must be measured by the value of the residential property, is at most $11,101, based on a comparable market analysis of the fair market value of the property. The plaintiff also states that the value of his home as listed on his Bankruptcy Schedule A was $72,238.

The defendant opposes the motion, arguing that in seeking to quiet title, the plaintiff is really attempting to extinguish the mortgage and promissory note, which have outstanding balances exceeding the $75,000 jurisdictional threshold. In addition, the sheriff's deed was procured for nearly $87,000, and setting aside the foreclosure sale would place that amount in controversy.

The Court heard oral argument on the motion to remand on October 19, 2011. Since then, the plaintiff supplemented his motion by filing a statement required by E.D. Mich. LR 81.1 explaining that his damage claims amount to no more than $12,000—which consist mainly of attorney's fees—and in seeking to quiet title the plaintiff desires to extinguish the sheriff's deed but not the underlying mortgage. The defendant has responded, arguing that the complaint does not make that distinction in the quiet title count, and the Court must assess the amount in controversy as of the time of removal without the plaintiff's subsequent elaboration.

■ The defendant acknowledges that this Court's subject matter jurisdiction is limited. The Court possesses only "that power authorized by Constitution and statute." *Metro Hydroelectric Co., LLC v. Metro Parks*, 541 F.3d 605, 610 (6th Cir.2008) (citation omitted). A civil action brought in a state court may be removed to federal court only if the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). There is no dispute in this case that the citizenship of the parties is diverse. But when jurisdiction is based on diversity of citizenship, "the matter in controversy [must] exceed[ ] the sum or value of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a)(1). A party invoking the federal court's jurisdiction has the burden of establishing subject matter jurisdiction. *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir.2010) (citing *Hertz Corp. v. Friend*, —— U.S. ——, 130 S.Ct. 1181, 1194–95, 175 L.Ed.2d 1029 (2010)).

■ When a plaintiff seeks equitable or declaratory relief, "we measure the amount in controversy by 'the value of the object of the litigation.' " *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir.2009) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). "Applying this principle, [the Sixth Circuit] has said that, '[w]here a party seeks a declaratory judgment, "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." ' " *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir.2011) (citations omitted) (holding that where the matter in controversy fails to exceed $75,000—even by a penny—the case must be remanded for want of subject matter jurisdiction). The burden is on the removing party "to show by a preponderance of the evidence that the allegations in the com-

plaint at the time of removal satisfy the amount-in-controversy requirement." *Northup Props.*, 567 F.3d at 769–70 (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir.2001)). The amount in controversy should be considered "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir.2007).

■ The plaintiff in this case does not contest the validity of the promissory note, the mortgage, or the amount of the debt. He concedes that even if he wins relief by quieting title and quashing the sheriff's deed, he would still own the property subject to his mortgage. Rather, the focus of his complaint is the foreclosure process and the resulting sheriff's deed that would dispossess him of his property. The "object of the litigation," therefore, is the residential property located at 12068 Beaverland in the City of Detroit.

■ The Court is not aware of any binding precedent in this Circuit the furnishes guidance on how to value foreclosed property for the purpose of assessing the amount in controversy. There appear to be two main approaches, however. A majority of courts addressing the valuation issue have found that, in the context of wrongful foreclosure, the amount in controversy is measured by the market value of the property. *See Meriedeth v. Mae*, No. 11–11866, 2011 WL 2456630 at *1 (E.D.Mich., June 13, 2011); *Bobel v. Met Life Home Loans*, No. 11–10574, 2011 WL 1831741 at *2 (E.D.Mich., May 13, 2011). Courts adopting that approach have reasoned that "generally at a foreclosure sale ... the sale price is closely tied to fair market value.... Since the enjoinder of a foreclosure sale prohibits a transaction involving the whole value of the property, then the most appropriate way to measure

the value of the rights at stake when a foreclosure is at issue is the value of the property itself." *Brown v. Citimortgage*, No. 10–0709–KD–M, 2011 WL 1059206 at *3 (S.D.Ala., Mar. 4, 2011) (internal citations and quotations omitted). However, courts taking that approach have used the foreclosure sale price to determine the value of the property. *See Meriedeth*, 2011 WL 2456630 at *2 (finding that the fact that the property sold for $303,811.66 at a sheriff's sale demonstrated that the value of the property exceeded $75,000); *Kehoe v. Aurora Loan Services LLC*, No. 3:10–cv–00256–RCJ–RAM, 2010 WL 4286331 at *4 (D.Nev., Oct. 20, 2010) (finding that a property that sold at a foreclosure sale for $981,000 was worth more than $75,000 and thus the amount in controversy requirement was met).

The second approach is that the amount in controversy is the amount owed on the mortgage loan. *See Meriedeth*, 2011 WL 2456630 at *1; *Bobel*, 2011 WL 1831741 at *3. However, many courts considering that approach have found that the amount of indebtedness and the market value of the property *both* exceeded $75,000, and therefore have declined to decide conclusively which method to use. *See, e.g., Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir.1973) (finding that both the amount of indebtedness and the fair market value exceeded the jurisdictional minimum); *Reyes v. Wells Fargo Bank, N.A.*, C–10–01667 JCS, 2010 WL 2629785 at *6 (N.D.Cal. June 29, 2010) (same); *Garland v. Mortgage Elec. Registration Sys., Inc.*, No. 09–71 (JNE/JJG), 2009 WL 1684424 at *3 (D.Minn., June 16, 2009) (same). The Court finds persuasive the reasoning supporting a market value rule. That approach best conforms to the requirement that the Court consider the amount in controversy "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect."

*Smith v. Nationwide Prop. & Cas. Ins. Co.,* 505 F.3d 401, 407 (6th Cir.2007). The plaintiff here is attempting to quiet title to a property; the value to him of that relief would be the market value of the property he wishes to possess. Because the property is the object of the litigation, the market value of the foreclosed property is the best measure of the amount in controversy in this case.

But this case differs in important particulars from other cases applying the market value approach. Unlike *Bobel* and *Brown,* the plaintiff in this case is seeking not to enjoin a foreclosure sale, but to undo a sale that has already occurred. *See Bobel,* 2011 WL 1831741 at *1; *Brown,* 2011 WL 1059206 at *1. In those cases, the courts did not have the benefit of a foreclosure sale price as evidence of the value of the subject property. And unlike *Meriedeth* and *Kehoe,* the foreclosure sale price in this case did not far exceed the amount in controversy threshold. In those cases, an inquiry into the fair market value of properties that sold for $303,811.66 and $981,000, respectively, was unnecessary to determine whether the value of the property exceeded $75,000. *See Meriedeth,* 2011 WL 2456630 at *2; *Kehoe,* 2010 WL 4286331 at *4. In contrast, the foreclosure sale price in this case was $86,774.37, and the plaintiff has presented evidence that the fair market value of the property is much lower: only $11,101 at most. The foreclosure sale price equaled the amount of the outstanding debt, nothing more. And the defendant has offered no rebuttal evidence that the fair market value of the property much exceeds the plaintiff's appraisal.

■■■ The defendant does not face a "daunting burden" of establishing the amount-in-controversy threshold. *See Gafford v. General Elec. Co.,* 997 F.2d 150, 159 (6th Cir.1993), *abrogated on other grounds by Hertz Corp. v. Friend,* ——

U.S. ——, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). It need only show "by a preponderance of the evidence that the amount in controversy requirement for a diversity action has been met." *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 572 (6th Cir.2001) (citing *Gafford,* 997 F.2d at 161). To meet that burden, the defendant "may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal." *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 755–56 (11th Cir.2010) (collecting cases). However, the removing party must provide *facts* in support of its removal notice. Conclusory statements alone do not establish the amount in controversy. *See Garza v. Bettcher Indus., Inc.,* 752 F.Supp. 753, 763–64 (E.D.Mich.1990) (citing *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (stating that if a party's "allegations of jurisdictional facts are challenged by [the] adversary in an appropriate manner, [it] must support them by competent proof")). Moreover, "because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 549–50 (6th Cir.2006) (quoting *Brown v. Francis,* 75 F.3d 860, 864–65 (3d Cir.1996)).

■■ After reviewing the applicable authority and the parties' submissions, the Court is not convinced that the defendant has met its burden of demonstrating by a preponderance of the evidence that the amount in controversy is more than $75,000. The defendant has presented only one piece of evidence—the foreclosure sale price—in support of its allegation that the value of the property exceeds $75,000. The defendant was apparently the only bidder at the foreclosure sale, and as mentioned, the amount bid reflected the loan

balance. According to the defendant, the mortgage was obtained in 1999 in the amount of $89,954. The Court is painfully aware that residential property values in the City of Detroit have plummeted since then. The Court does not believe that the foreclosure sale price is an accurate measure of the present true value of the property. Meanwhile, the plaintiff has presented a comparable market analysis that tends to show that the fair market value of the property is, at most, $11,101, and his Bankruptcy Schedule A, on which the value of the property is listed as $72,238. Viewing all of the evidence presented by the parties, the Court is not persuaded that it is "more likely than not" that the amount in controversy exceeds $75,000. *Gafford*, 997 F.2d at 158.

Accordingly, it is **ORDERED** that the plaintiff's motion to remand [dkt. # 15] is **GRANTED**.

It is further **ORDERED** that the case is **REMANDED** to the Wayne County, Michigan circuit court.