**Michael G. MAY, Plaintiff–Appellant,**

v.

**CITIMORTGAGE, INC. and ABN Amro Mortgage Group, Inc., Defendants–Appellees.**

No. 15–1061.

United States Court of Appeals, Sixth Circuit.

May 12, 2016.

Before: CLAY, GIBBONS, and STRANCH, Circuit Judges.

OPINION

JANE B. STRANCH, Circuit Judge.

Michael G. May appeals the district court's grant of summary judgment in favor of CitiMortgage, Inc. and ABN AMRO Mortgage Group, Inc. (collectively CitiMortgage), holders of the mortgage on the home initially owned by May and his wife.[1] After he was awarded sole ownership of the property in divorce proceedings, May attempted to effect a conditional mortgage refinance option. CitiMortgage refused, and May brought breach of contract claims alleging substantial performance. The district court found that May failed to fulfil

---

1. CitiMortgage, Inc. is the successor by merger to ABN AMRO Mortgage Group, Inc.

2. The Balloon Note Addendum and the Balloon Rider set forth identical conditions re-

an essential condition to qualify for refinancing—obtaining the signature of his fellow borrower and now ex-wife. For the following reasons, we affirm the order of the district court.

## I. BACKGROUND

In July 2003, May and his then-wife Valerie May, borrowed $264,500.00 from CitiBank and secured the loan with a mortgage on their condominium. By the terms of the mortgage, as set forth in the Balloon Note (the Note), the Mays agreed to make a comparatively small monthly payment each month for seven years, until the Note's maturity date on August 1, 2010. At that time, the remaining principal, more than $200,000.00, was to be paid in full. The mortgage agreement included a conditional right to refinance, as set forth in the Balloon Note Addendum (the Addendum) and the Balloon Rider.[2] This option allowed the Mays to obtain a new loan with a maturity date of August 1, 2033, provided that they satisfied the following conditions:

> If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (a) I must still be the owner of the Property subject to the Security Instrument (the "Property"); (b) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (c) the New Note Rate cannot be more than five percentage points above the Note Rate; and (d) I must make a writ-

garding the right to refinance. As explained by the district court, "[t]he Rider is to the Mortgage as the Addendum is to the Note."

ten request to the Note Holder as provided in Section 5 below.

R. 39–2, PageID 560, Section 2. Section 5 of the Addendum instructed the borrowers on how to exercise the conditional refinancing option:

> If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate. . . . I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership. Before the Maturity Date, the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount, and a date, time, and place at which I must appear to sign any documents required to complete the required refinancing.

*Id.* at 561, Section 5.

The Note identified both Michael and Valerie as "borrowers," as did the Addendum and the Balloon Rider. The mortgage document itself likewise identified both Michael and Valerie as "borrower" and respectively as "Husband and wife." Both Michael and Valerie signed each document.

Michael and Valerie divorced in April 2009. Michael was assigned the condominium and, pursuant to the terms of their divorce, became "responsible for timely payment of the mortgage" and agreed to "indemnify and hold Valerie May harmless from obligations." Valerie executed and delivered to Michael "a recordable Quit Claim Deed transferring her interest" to him. Since this time, Michael and Valerie have not spoken. May knows only that his ex-wife "is believed to be located somewhere in the State of Arizona."

Prior to the original mortgage maturity date of August 1, 2010, May timely communicated his desire to refinance and, pursuant to discussions with his CitiMortgage contact, on two separate occasions transmitted copies of his divorce papers and quit claim deed. CitiMortgage twice sent revised refinance contracts that erroneously identified the borrowers as married. On August 25, almost a month after the deadline, May finally received a revised copy of the contract (the Loan Modification). However, this version identified the borrowers as "Michael G. May, a single person, and Valerie May, a single person." May timely returned the Loan Modification bearing only his signature despite the instruction that "[a]ll Borrowers listed on the enclosed Balloon Loan Modification" must sign.

CitiMortgage refused to process the Loan Modification without Valerie's signature and contacted May again on September 15, 2010, to explain that either Valerie must sign the refinance contract or submit a Release of Liability form. This appears to be the first mention of such a form by CitiMortgage. May submitted the Release of Liability form and $900 check for processing sometime after November 8, 2010, understanding the form to require his signature alone. Apparently, the form and check were not processed and May asserts that CitiMortgage lost them.

Since that time, May has remained on the property. He has continued to pursue the issue with CitiMortgage and made additional monthly payments totaling approximately $13,000 as of 2012. He asserts that CitiMortgage has returned a number of the checks or accepted them but placed them in an unapplied escrow account.

In August 2012, despite Valerie's absence, CitiMortgage offered May a loan modification addressed to him as the sole borrower with a modified principal amount approximately $23,000.00 higher than the

principal as of August 2010. May objected to a modification predicated on his alleged default rather than a reset (refinancing) and rejected the offer.

On September 18, 2012, May filed a cause of action for breach of contract in Michigan state court based primarily on CitiMortgage's refusal to refinance his mortgage, its alleged "deliberate[ ]" loss of his paperwork, and the 2012 offer to modify the loan at a higher interest rate and principal balance.[3] CitiMortgage removed the case to federal court and unsuccessfully sought to join Valerie as a necessary party.

In May 2014, CitiMortgage moved for summary judgment, which the district court granted on December 17, 2014. At that time, the district court also denied May's motion ·to amend his complaint to include a claim under the Fair Credit Reporting Act (FCRA), which May filed after CitiMortgage moved for summary judgment. The proposed amended complaint alleged that CitiMortgage falsely reported that May was in default to credit agencies, but did not specify any particular provision of the FCRA. To the extent this constituted a cause of action under · 15 U.S.C. § 1681s–2(b), the district court found it was futile, as May failed to allege that he had notified any credit reporting agency of the false reporting or that an agency had contacted CitiMortgage regarding the dispute. *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615–16 (6th Cir.2012) (explaining that "consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a [consumer reporting agency]"). The district court denied May's subsequent motion for reconsideration, at which time May filed his notice of appeal to this court.

On appeal, May asserts that a genuine issue of material fact exists as to whether he substantially performed the conditions to refinance and that the district court erred by not considering this argument.[4] CitiMortgage responds that the doctrine of substantial performance does not apply to express contractual obligations and that Valerie's signature was a condition precedent. Even if substantial performance did apply to this situation, CitiMortgage contends, May committed the first material breach when he failed to pay the Note by the maturity date.

## II. ANALYSIS

The district court's grant of summary judgment is reviewed de novo. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir.2014). Summary judgment is appropriate only where the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The burden lies with the party seeking summary judgment, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and we view the evidence in the light most favorable to the non-moving party, drawing all justifi-

---

**3.** Though the complaint listed its requests for damages and relief "under theories of promissory estoppel" as well as breach of contract, no further mention of promissory estoppel—either in the complaint or response to summary judgment—was made. For this reason, the district court found the claim to be forfeited. May also fails to raise the matter on appeal, therefore, to the extent this argument was ever offered, we consider it waived. *See*

*Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir.1989) ("We normally decline to consider issues not raised in the appellant's opening brief.").

**4.** May does not appear to independently challenge the district court's ruling regarding his motion to amend the complaint to add an FCRA claim.

able inferences in their favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, this inquiry looks to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

Because the case was removed to federal court on the basis of diversity jurisdiction, we look to the substantive law of Michigan, the forum state, and apply federal procedural law. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir.2009). To prevail on a breach of contract claim under Michigan law, the plaintiff must establish the existence of a valid contract, the terms of the contract, that the defendant breached those terms, and that the plaintiff was injured as a result. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). Where the language of the contract is unambiguous, its meaning is a question of law. *Port Huron Educ. Ass'n. v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 550 N.W.2d 228, 237 (1996).

May's complaint alleges that CitiMortgage committed a breach of contract by "[f]ailing to honor their modification which was accepted by [May] after being drafted and submitted by CitiMortgage to [him]." However, Valerie's signature aside, the Loan Modification was never signed by a CitiMortgage representative and does not constitute a valid contract. *See Trombley v. Seterus Inc.*, 614 Fed.Appx. 829, 832 (6th Cir.2015) ("Under Michigan's statute of frauds, a financial institution's promise regarding financial accommodation, like a loan modification, is void unless it is (1) in writing and (2) signed with an authorized signature by the party to be charged with the promise.") (citing Mich. Comp. Laws § 566.132(2)(c)). Thus, the Loan Modification cannot form the basis of May's breach

of contract claim. *See Thabata v. Bank of America, N.A.*, 620 Fed.Appx. 467, 470 (6th Cir.2015) (finding the contract-based doctrine of substantial performance inapplicable where neither the borrower nor the lender signed the trial period plan for a mortgage modification).

May's Response in Opposition to Summary Judgment reframed more generally his breach of contract argument by referencing CitiMortgage's failure to refinance the mortgage. The district court interpreted his argument to allege a breach of the Addendum and undertook the summary judgment analysis on this basis. May contends that he himself satisfied all of the conditions for refinancing set forth in the Addendum and, to the extent that Valerie's signature is also a condition, it is "irrelevant and impossible."

While sympathetic to May's plight, we disagree with his reasoning. According to the plain language of the Note—a contract entered into by May, his ex-wife, and Citi-Mortgage—the conditional right to refinance was granted to the borrowers. An agreement between the two to shift the allocation of responsibilities that both had undertaken did not change the terms of their contract with CitiMortgage. As set forth in the Note:

> If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.... Any person who takes over these obligations ... is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

R. 39–1, PageID 558. Moreover, CitiMortgage retained the right to require immediate payment in full if any interest in the property was sold or transferred without its prior written consent.

May's reliance on the doctrine of substantial performance is inapposite where the plain language of the loan documents requires Valerie's signature as a borrower to exercise the conditional refinancing option. As for May's assertion that his substantial performance argument was not considered below, our reading of the order indicates that the district court did consider it and simply disagreed. *See* R. 40, PageID 602 ("Although May repeatedly stresses that he met the conditions set forth in the Addendum, he overlooks critical language in that agreement requiring Valerie's signature.").

As stated in the Addendum, refinancing requires the borrower to appear and "sign any documents required to complete the refinancing." While this requirement may, unfortunately, be "impossible" in May's situation, it is not "irrelevant," as he contends on appeal. A lender may contract for the participation of two borrowers, each presumptively with his or her own earning power, who are held jointly and severally liable for their associated obligations.

We can identify no genuine issue of material fact regarding whether the conditions to refinance were satisfied and instead concur with the decision below that CitiMortgage is entitled to judgment as a matter of law.

### III. CONCLUSION

Based on the foregoing reasoning, we affirm the order of the district court.