NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0356n.06

Case No. 17-6043

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jul 19, 2018

DEBORAH S. HUNT, Clerk

TERRY JOE BEASLEY,

    Plaintiff-Appellant,

v.

WELLS FARGO BANK, N.A., as Trustee for
the Certificate Holders of PARK PLACE
SECURITIES, INC., et al.,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF
TENNESSEE

BEFORE: NORRIS, SUTTON, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** In an action arising from the foreclosure of his home, Plaintiff-Appellant Terry Joe Beasley ("Beasley") appeals the district court's grant of Defendants-Appellees' motion for judgment on the pleadings and the district court's denial of Plaintiff-Appellant's motion for remand. Beasley challenges the foreclosure of the property on the basis of an allegedly inadequate sale price and alleged irregularities in the sale. Beasley also challenges the denial of remand, on the grounds that the amount-in-controversy requirement was not met, and additionally because the Small Business Administration ("SBA"), one of his named defendants, did not consent to removal and is not a "nominal" defendant. For the reasons stated herein, we **AFFIRM**.

## I.    Factual and Procedural Background[1]

Beasley, a Tennessee resident, owns property known as 2009 College View Drive, Murfreesboro,[2] in Rutherford County, Tennessee (the "Property").  Beasley entered into a loan of deed and trust for the Property with Ameriquest Mortgage Company ("Ameriquest"), dated June 23, 2004 and executed on June 29, 2004.  The loan amount was $189,000.  Ameriquest recorded a deed of trust (the "Deed of Trust") securing its interest in the Property.  Thereafter, Beasley obtained a loan from the SBA (the "SBA Loan").  The SBA Loan was also secured by the Property.  Subsequently, Ameriquest transferred all of its "right, title and interest in and to" the Deed of Trust, including the "indebtedness" secured by the Deed of Trust, to Wells Fargo.  On December 14, 2009, SBA and Wells Fargo executed a Limited Subordination Agreement ("Subordination Agreement"); in it, SBA "agreed to subordinate a certain portion of its secured indebtedness to Wells Fargo, even though the Wells Fargo Deed of Trust was filed after the SBA Deed of Trust."  The agreement provided that "Wells Fargo may commence foreclosure proceedings," at whose close "the SBA Deed of Trust shall be considered no longer a lien on the Property, provided that any sale proceeds above $100,000[] are paid to the SBA  . . . [up to] the SBA secured indebtedness[]."

Beasley fell behind in his payments to Wells Fargo.  On April 11, 2016, Rubin Lublin TN, PLLC ("Rubin Lublin"), in its role as substitute trustee, sent a "Notice of Acceleration and Foreclosure" to Plaintiff, advising that the Property would be foreclosed upon if Beasley failed to pay the debt in full.  The Notice also pointed Beasley to a website concerning "loss mitigation options and saving your home from foreclosure."  On April 18, April 25, and May 2, 2016, *The*

---

[1]The facts set forth in Section I.A of this opinion are undisputed, unless otherwise specified.

[2]The notice of removal incorrectly refers to Beasley as being a citizen and resident of "Rutherford County, Memphis, Tennessee."  "Memphis" appears to be a confusion with Beasley's actual city of residence, Murfreesboro.  In any case, it is undisputed that Beasley is a citizen and resident of Tennessee.

*Murfreesboro Post* published a notice of the foreclosure sale of the Property. Then, on June 28, 2016, Rubin Lublin sent Plaintiff a Notice of Postponement informing him of the postponement of the foreclosure sale to July 11, 2016 at 2:00 p.m. at the Murfreesboro courthouse door. The Property was ultimately sold at a non-judicial foreclosure sale, on January 17, 2017 (the "Foreclosure Sale"), during the pendency of Beasley's earlier action against Wells Fargo arising from the same loan and attempted foreclosure.[3] At the Foreclosure Sale, the Property sold to Wells Fargo for $100,000. Beasley claims the sale price was far below the Property's alleged fair market value of $175,000.

On March 10, 2017, Beasley filed an action in the Chancery Court for Rutherford County, Tennessee, alleging wrongful foreclosure, and naming as defendants Wells Fargo Bank, N.A., as Trustee for the Certificate Holders of Park Place Securities, Inc. Asset-Backed-Pass-Through Certificates, Series 2004-MCW1, and Wells Fargo Bank, N.A., individually (collectively, "Wells Fargo"), and the SBA.

On April 20, 2017, Wells Fargo filed a notice of removal, which was entered on April 21, 2017. The parties do not dispute that complete diversity of citizenship existed at the time the notice of removal was filed: Beasley was a citizen and resident of Rutherford County, Tennessee; Wells Fargo, N.A. was a California corporation, Park Place was a Delaware corporation, and SBA was an agency of the United States and a citizen of Washington, D.C.

---

[3]In the earlier action, Beasley filed suit on June 13, 2016 in the Chancery Court of Rutherford County, Tennessee against Wells Fargo Bank, N.A., as Trustee for the Certificate Holders of Park Place Securities, Inc., asset-backed pass-through Certificates, SERIES 2004-MCW1, "alleging multiple instances of wrongdoing in connection with his mortgage and the scheduled foreclosure on the Property," including claims of violations of "the terms of the securitized trust" in violation of Tennessee statute and of the Tennessee Constitution; of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; and of "regulations promulgated pursuant to the Consumer Financial Protection Act," 12 U.S.C. § 5511 *et seq. Beasley v. Wells Fargo Bank*, No. 3:16-cv-1373, 2017 U.S. Dist. LEXIS 13239, at *4 (M.D. Tenn. Jan. 31, 2017). Wells Fargo then removed the action to the United States District Court for the Middle District of Tennessee. *Id.* at *4-5. Beasley sought an injunction barring Wells Fargo from taking further action on the scheduled foreclosure. *Id.* at *4. Wells Fargo moved for judgment on the pleadings; the district court granted the motion, and dismissed Beasley's complaint for failure to state a claim, without prejudice. *Id.* at *18.

On May 9, 2017, Beasley moved to remand, raising two challenges to removal. First, he argued that of the two defendants named in his complaint, only one had consented to removal. Without Defendant SBA's consent, he contended, "this case cannot be removed." As a second challenge, Beasley averred that "the damages alleged by Plaintiff . . . are *less than* $75,000[]." While placing the value of the Property at $175,000, Beasley nevertheless argued that "clear[ly] . . . the controversy is over the $75,000 which should have been credited to Plaintiff's SBA loan—not the full value of the property."

In opposing remand, Wells Fargo argued: (1) that the amount in controversy was over $75,000 because "the amount in controversy is measured by the value of the object of the litigation," which Wells Fargo asserted was "the value of the Property, which is the object of this action"; (2) that "Defendants were not required to obtain SBA's consent to removal" because they "had no knowledge that the SBA had been served, as there was no return of service on file with the state court, nor had the SBA appeared in the case"; and (3) that SBA's consent was also not needed because SBA was a nominal defendant.

The district court concluded that Wells Fargo was not required to obtain SBA's consent at the time of removal, *Beasley v. Wells Fargo Bank, N.A.*, No. 3:17-cv-00726, 2017 U.S. Dist. LEXIS 95841, at *6-7 (M.D. Tenn. June 21, 2017), and that the amount in controversy exceeded $75,000, *id.* at *12-13. Therefore, the district court concluded that removal was proper, and denied Beasley's motion to remand. *Id.* at *13.

Beasley filed an Amended Complaint on July 5, 2017. By memorandum opinion and order of August 7, 2017, the district court granted Beasley's motion to amend, but dismissed the amended complaint in its entirety for failure to state a claim upon which relief can be granted. *Beasley v. Wells Fargo Bank, N.A.*, No. 3:17-cv-00726, 2017 U.S. Dist. LEXIS 124256, at *19-20

(M.D. Tenn. Aug. 7, 2017). The court dismissed with prejudice Beasley's claim to set aside the Foreclosure Sale, but dismissed without prejudice his claim for damages "as it is not clear whether [Beasley] could assert additional facts causally linking the lack of notice to actual damages." *Id.* at *20.

On appeal, Beasley argues that the district court improperly denied his remand motion, because the amount in controversy in the case does not exceed $75,000, (Appellant's Br.[4] at 5-7), and because removal was improper since SBA is not a "nominal" defendant, (*id.* at 7-8); he also argues the district court erred by not finding that the "combined irregularities" in the non-judicial Foreclosure Sale conducted by Wells Fargo warranted the setting aside of the sale, (*id.* at 8-10).

## II.    Analysis

### A.    Standard of Review and Legal Framework

We review *de novo* the denial of a motion to remand. *Strong v. Telectronics Pacing Sys.*, 78 F.3d 256, 259 (6th Cir. 1996) (citing *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 338 (6th Cir. 1989)). Our inquiry is limited to determining "whether the case was properly removed to federal court in the first place." *Id.* (quoting *Fakouri v. Pizza Hut of America, Inc.*, 824 F.2d 470, 472 (6th Cir. 1987)). The party seeking removal has the burden of establishing federal court jurisdiction. *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)).

We also review *de novo* a district court's grant of a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014) (citation omitted). Under that standard, the same we apply to a grant of a 12(b)(6) motion to dismiss, *Commer. Money*, 508 F.3d at 336, "we construe the complaint in the light most

---

[4]References to "Appellant's Br." in this opinion are to be understood as referring to Appellant's Corrected Brief.

favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law," *id.* (citation omitted).

On a motion to dismiss, the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means, with respect to a claim, that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While accepting well-pled factual allegations as true, we need not accept the truth of "plaintiff's legal conclusions or unwarranted factual inferences." *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

Where, as here, an action "was removed to federal court on the basis of diversity jurisdiction, we look to the substantive law of . . . the forum state, and apply federal procedural law." *May v. Citimortgage, Inc.*, 648 F. App'x 567, 571 (6th Cir. 2016) (citation omitted). Therefore, Tennessee substantive law governs this case. *See id.*

B.      **The Motion to Remand**

1.      *Amount in Controversy*

It is a jurisdictional requirement in diversity cases that the amount in controversy, exclusive of interest and costs, must exceed $75,000. *See Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010) (citing 28 U.S.C. § 1332); *see also Freeland v. Liberty Mutual Fire Insurance Company*, 632 F.3d 250, 252-53 (6th Cir. 2011) (holding that amount in controversy of exactly $75,000 fails by "one penny" to meet diversity jurisdictional requirement of "exceed[ing] the sum or value of $75,000"). Where a defendant seeks removal under 28 U.S.C. § 1332(a), a federal

statute establishes a presumption that "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." § 1446(c)(2). However, there are two statutory exceptions to this rule, one where the initial pleading "seeks nonmonetary relief," § 1446(c)(2)(A)(i), the other (in relevant part) where the initial pleading seeks "a monetary judgment, but the State practice . . . permits recovery of damages in excess of the amount demanded," § 1446(c)(2)(A)(ii). In such cases, the defendant's "notice of removal may assert the amount in controversy." § 1446(c)(2)(A). Both exceptions apply here: Beasley's complaint seeks injunctive relief "preventing Defendants . . . from further foreclosure and eviction actions against Plaintiff's home," and Tennessee law allows a plaintiff to recover damages in excess of the amount demanded, *see Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 873 (6th Cir. 2000). The removing defendant bears the burden of showing that the amount in controversy requirement "'more likely than not' is satisfied. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 819, 822 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993)). This "does not place upon the defendant [a] daunting burden." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001) (quoting *Gafford*, 997 F.2d at 158). Where, as here, a plaintiff "[challenges] a defendant's assertion of the amount in controversy," the Supreme Court has further explained that "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

### a) Value of the Object of the Litigation

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash.*

*State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). The parties here dispute what "the value of the object of the litigation" means: Wells Fargo argues that the amount in controversy is determined by the value of the Property at issue, (Appellee's Br.[5] at 11-12), relying on *Moulds v. Bank of N.Y. Mellon*, No. 1:11-CV-200, 2011 U.S. Dist. LEXIS 104144, at *9-10 (E.D. Tenn. Sept. 14, 2011), and the Sixth Circuit case of *Cleveland Housing Renewal*, 621 F.3d 560. In *Moulds*, the district court held that, in a case involving the foreclosure sale of a Property for approximately $187,000, it was "reasonable for this Court to conclude . . . that the object of the litigation [wa]s the foreclosed property," the sale price of which satisfied the amount-in-controversy requirement. 2011 U.S. Dist. LEXIS 104144, at *11.

Beasley, in turn, urges that the pertinent amount is the difference between the fair market value of the Property and the price obtained at the Foreclosure Sale. (Appellant's Br. at 5-7). Beasley furnishes no authority in support of the view he advocates. (*See id.*). However, Beasley attempts to distinguish *Moulds* on the grounds that the plaintiff there failed to plead an amount in controversy, whereas here Beasley "gave a clear reason for his prayer for relief: the first $100,000 of any proceeds were going to Wells Fargo" but "any remaining value in the property must be paid *on his account and for his benefit* to the SBA," (*id.*).

The district court saw it Wells Fargo's way, holding that "the amount in controversy here consists of the value of the Property in foreclosure, which is the subject of [Beasley's] demand for an injunction. Whether that figure is deemed to be $175,000 or $100,000, it still exceeds the jurisdictional threshold." *Beasley*, 2017 U.S. Dist. LEXIS 95841, at *13. Therefore, the court found that Wells Fargo had "established, by a preponderance of the evidence, that the amount in controversy exceeds $75,000." *Id.*

---

[5]References to "Appellee's Br." in this opinion are to be understood as referring to Appellee's Corrected Brief.

Numerous district courts in this Circuit have noted the lack of binding precedent regarding how the amount in controversy should be determined in foreclosure-related cases. *See, e.g., Williams v. JPMorgan Chase Bank, N.A.*, No. 12-CV-12476, 2012 U.S. Dist. LEXIS 174865, at *6 (E.D. Mich. Dec. 11, 2012); *McGhee v. CitiMortgage, Inc.*, 834 F. Supp. 2d 708, 712 (E.D. Mich. Dec. 19, 2011); *Bobel v. MetLife Home Loans, Inc.*, No. 11-CV-10574, 2011 U.S. Dist. LEXIS 51388, at *6 (E.D. Mich. May 13, 2011); *see also Molotky v. Capel*, No. 1:17-cv-523, 2018 U.S. Dist. LEXIS 11369, at *9 (W.D. Mich. Jan. 2, 2018); *Meriedeth v. Fannie Mae*, No. 11-CV-11866, 2011 U.S. Dist. LEXIS 64406, at *3 (E.D. Mich. June 13, 2011). Two main approaches have been discerned, with "[a] majority of courts addressing the valuation issue . . . f[i]nd[ing] that, in the context of wrongful foreclosure, the amount in controversy is measured by the market value of the property." *McGhee*, 834 F. Supp. 2d at 712 (citing, inter alia, *Meriedeth*, 2011 U.S. Dist. LEXIS 64406, at *3; *Bobel*, 2011 U.S. Dist. LEXIS 51388, at *6); *see also Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 777 (9th Cir. 2017) (Kleinfeld, J., dissenting) ("[T]hat . . . the amount in controversy is the value of the property sought to be foreclosed . . . is the long-established general rule.").

Alternative approaches seek to more narrowly define the amount in controversy in foreclosure cases. The main alternative approach looks to "the amount owed on the mortgage loan" as determinative. *McGhee*, 834 F. Supp. at 712 (citing, inter alia, *Meriedeth*, 2011 U.S. Dist. LEXIS 64406, at *3-4). Other courts have inquired into such information as the amount of equity a plaintiff had in a foreclosed property. *See Dobucki v. HSBC Bank USA*, No. 4:11-CV-824-A, 2012 U.S. Dist. LEXIS 25694, at *5-9 (N.D. Tex. Feb. 27, 2012) (rejecting the "property value" test for amount in controversy). At a higher level of generality, the narrow approach was expressed by this court in *Freeland* as "the value of the consequences which may result from the litigation."

632 F.3d at 253 (quoting *LoDal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1997 U.S. App. LEXIS 12841, 1998 U.S. App. LEXIS 12841, at *6 (6th Cir. June 12, 1998)). However, this Court held that this more restrictive approach applies specifically where a plaintiff seeks a *declaratory* judgment. *Id.* Here, in contrast, *injunctive* relief is among the relief Beasley seeks.

Because Beasley's complaint sought to enjoin Wells Fargo's "further foreclosure and eviction actions against Plaintiff's home," the district court properly concluded that "the amount in controversy here consists of the value of the Property in foreclosure, which is the subject of [Beasley's] demand for an injunction." *Beasley*, 2017 U.S. Dist. LEXIS 95841, at *12-13; *see McGhee*, 834 F. Supp. at 712. Beasley's asserted fair market value for the Property, $175,000, (Appellant's Br. at 5-6), amply satisfies the amount-in-controversy requirement, *see* 28 U.S.C. § 1332. Alternatively, taking the amount of the Foreclosure Sale, $100,000, as a proxy for the value of the Property, the requirement is still clearly met. *See Meriedeth*, 2011 U.S. Dist. LEXIS 64406, at *3; *Kehoe v. Aurora Loan Servs. LLC*, No. 3:10-cv-00256-RCJ-RAM, 2010 U.S. Dist. LEXIS 119947, at *10 (D. Nev. Oct. 20, 2010). Moreover, in asking the district court to set aside the Foreclosure Sale, Beasley was "seeking to undo a transaction worth" $100,000, which is also clearly above the amount-in-controversy requirement. *See Kehoe*, 2010 U.S. Dist. LEXIS 119947, at *8-10.

### b) Difference Between Foreclosure Price and Fair Market Value

We pause to note that for Beasley's argument that the amount in controversy equals the difference between the Foreclosure Sale price and the Property's fair market value, (*see* Appellant's Br. at 5-7), to defeat jurisdiction here, the fair market value must not exceed $175,000. Our precedent recognizes that the amount in controversy requirement can be the object of self-interested claims by parties attempting to obtain, or avoid, removal. *See, e.g., Rogers*, 230 F.3d at

872 (citing *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)) ("[A] post-removal stipulation reducing the amount in controversy to below the required jurisdictional amount is ineffective to deprive a district court of jurisdiction."). While Beasley's claim that he was "harmed . . . in an amount not to exceed $75,000[]," (Appellant's Br. at 9-10), and that his interest is "*expressly limited* to $75,000[]," (*id.* at 6), was not a "post-removal stipulation," it rests on a purely speculative $175,000 fair-market-value figure, without support in the record. *See Brown v. Randell*, No. 88-3310, 1988 U.S. App. LEXIS 9923, at *2 (6th Cir. July 22, 1988) (holding plaintiff's "highly speculative" claim to future royalties could not satisfy the amount in controversy requirement). The record does, however, contain a data point that is non-speculative: $189,000, the purchase price Beasley paid for the Property in 2004, and the amount of his loan from Ameriquest.

Moreover, Beasley states elsewhere in his appellate brief that "he pled that the property sold for barely half of the fair market value." (Appellant's Br. at 9). Merriam-Webster defines "barely," in relevant part, as "scarcely, hardly"; other dictionaries, as "[b]y a very little; hardly," and as "emphasizing how small an amount is."[6] A foreclosure sale price of $100,000, if only "barely half"— 51%—of fair market value, would make the latter value just over $196,000. This Court "ha[s] discretion to consider a statement made in a brief to be a judicial admission, binding on both this court and the trial court." *United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004) (citing *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003)); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000).

---

[6]Merriam-Webster, *Definition of BARELY*, https://www.merriam-webster.com/dictionary/barely (last accessed June 29, 2018); American Heritage Dictionary, *Barely*, https://ahdictionary.com/word/search.html?q=barely (last accessed June 29, 2018); Macmillan Dictionary, *Barely*, https://www macmillandictionary.com/us/dictionary/american/barely (last accessed June 29, 2018).

Using Beasley's original purchase price of $189,000 as a proxy for the Property's fair market value would render a difference of $89,000 over the Foreclosure Sale price, satisfying the amount-in-controversy requirement. Granting Beasley's assertion that $100,000 was "barely half of the fair market value" generates a different proxy, $196,000; the resulting difference, $96,000, even more amply clears the amount-in-controversy bar. (*See* Appellant's Br. at 9); *see also Burns*, 109 F. App'x at 58. Since Beasley furnishes no evidence that the fair market value was $175,000 or less, even if we accepted Beasley's reading of "the value of the object of the litigation," by a preponderance of the evidence the amount-in-controversy requirement would be met. *See Dart Cherokee*, 135 S. Ct. at 554.

### 2. *Absence of Consent to Removal by SBA*

Beasley also challenges removal with regard to Defendant SBA. (Appellant's Br. at 7-8). For a notice of removal to be proper, the "rule of unanimity" mandates that "all defendants who have been served or otherwise properly joined in the action must either join in the removal or file a written consent to" the same. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201 (6th Cir. 2004) (quoting *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999)). Two exceptions to this rule are where the non-joining defendant "has not been served with service of process at the time the removal petition is filed," or "is merely a nominal or formal party." *Klein v. Manor Healthcare Corp.*, No. 92-4328, 1994 U.S. App. LEXIS 6086, at *12 n.8 (6th Cir. Mar. 22, 1994) (quotation omitted); *see also Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013) (noting federal courts' long recognition of the nominal party exception to the rule of unanimity); *Geiman v. N. Ky. Water Dist.*, No. 2:13-cv-177(WOB-CJS), 2014 U.S. Dist. LEXIS 197177, at *11 (E.D. Ky. Jan. 16, 2014)

In moving for remand, Beasley argued that the SBA "ha[d] not consented to removal[,] so this case cannot be removed." The district court found, "on the basis of the record before it[,] that the Wells Fargo defendants removed the case before the SBA had been served," and that, "because the plaintiff does not dispute . . . that the SBA had not been served at the time of removal, the SBA's consent to removal was not required." *Beasley*, 2017 U.S. Dist. LEXIS 95841, at *6-7 (citing 28 U.S.C. § 1446(b)(2)(A)). On appeal, Beasley makes no mention of the issue of service of process as it regards SBA. (*See* Appellant's Br. at 7-8). Having failed to address the district court's reasoning on this point, Beasley has forfeited his argument on the issue. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310-11 (6th Cir. 2005). Because consent to removal need not be obtained from a defendant who "has not been served with service of process at the time the removal petition is filed," this Court can affirm the district court's judgment with regard to SBA on this ground alone. *See Klein*, 1994 U.S. LEXIS 6086, at *12 n.8.

Beasley's sole SBA-related argument on appeal is that "SBA is not a 'nominal' Defendant." (Appellant's Br. at 7-8). Though he fails to develop the argument by relating the latter assertion to the district court's denial of remand, we infer that denying that SBA is a "nominal" defendant is an attempt to refute one of the grounds for an exception to the "rule of unanimity." *Harper*, 392 F.3d at 201. This amounts to a "skeletal" argument, leaving this Court to "put flesh on its bones." *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quotation omitted). Arguably Beasley has run afoul of our rule that "[i]ssues adverted to in a perfunctory manner," lacking "some effort at developed argumentation, are deemed waived." *See id.* at 995. Nonetheless, we take up Beasley's contention that the Subordination Agreement gave SBA "a real interest in having the property sold for the actual fair market value," and that "any resolution of this case without SBA is not . . . 'consistent with equity and good conscience'" and

would be unfair to SBA. (Appellant's Br. at 8 (quoting *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970))).

When "neither necessary nor indispensable" to an action, a defendant is considered "nominal or formal," rather than "real." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017); *see also Pettis v. City of Memphis*, Civil No. 09-2248 A/P, 2009 U.S. Dist. LEXIS 124553, at *8-9 (W.D. Tenn. Dec. 9, 2009). Beasley's citation to *Tri-Cities Newspapers* invokes the other rule used by many courts in making a "nominal or real" determination: "whether in the absence of the defendant [in question], the Court can enter a final judgment consistent with equity and good conscience which would not be in any way *unfair or inequitable to plaintiff*." *Thermoset*, 849 F.3d at 1317 (quoting *Tri-Cities Newspapers*, 427 F.2d at 327) (alteration and emphasis added). The unfairness that concerned the Eleventh Circuit in *Thermoset* and the Fifth Circuit in *Tri-Cities Newspapers* is that a defendant's absence might "put [the plaintiff] at risk of receiving inadequate relief." *Id.* at 1317-18. Here, in contrast, the unfairness Beasley warns of is the risk of a resolution "unfair and inequitable to the SBA"—a *defendant*. *Tri-Cities Newspapers* is therefore inapposite.

As the district court found and the facts of the case make clear, Beasley "assert[s] [no] claims against" and "seek[s] [no] damages" from SBA. *Beasley*, 2017 U.S. Dist. LEXIS 95841, at *10. To the extent that Beasley claims on SBA's behalf that Wells Fargo's conduct of the Foreclosure Sale harmed SBA, a litigant generally may not make claims on behalf of a third party. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *Hartford Fire*, 736 F.3d at 262 (noting that "[t]he nominal party exception" prevents the situation where a plaintiff "assert[s] no interest adverse to [a] [particular] defendant"). Because Beasley has established "no real basis for liability against the SBA," the district court properly concluded that, in addition to the lack of service to SBA when

the removal notice was filed, SBA was a nominal defendant, whose consent to removal was therefore not required. *Beasley*, 2017 U.S. Dist. LEXIS 95841, at *11.

### C. Wrongful Foreclosure Claim

Beasley argues that the foreclosure sale of the Property by Wells Fargo was wrongful and therefore the district court should have set it aside. He relies on *EverBank v. Henson*, No. W2013-02489-COA-R3-CV, 2015 Tenn. App. LEXIS 11 (Tenn. Ct. App. Jan. 9, 2015), for the proposition that "irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price" can form the basis for a court to set aside a foreclosure sale. (Appellant's Br. at 8-9 (citing *EverBank*, 2015 Tenn. App. LEXIS 11, at *21)).

In arguing that the Foreclosure Sale should be set aside pursuant to *EverBank*, Beasley alleges the following defects of the sale: (a) Wells Fargo's failure to provide Beasley with statutory notice of the rescheduled foreclosure sale; (b) the "inadequate price" at foreclosure; (c) the "ironic" sale price exactly matching Wells Fargo's capped entitlement to foreclosure proceeds under its Subordination Agreement with SBA; and (d) the sale having been "conducted during the pendency of a federal lawsuit challenging Wells Fargo's right to foreclose at all." (Appellant's Br. at 9). Beasley asserts, in conclusory fashion and citing no authority other than *EverBank* as a whole, that the "combination" of instances of alleged misconduct "is enough to sustain a cause of action for wrongful foreclosure." (*Id.*). Equally conclusory are references to the "*suspicious* non-judicial foreclosure sale," (*id.* at 8 (emphasis added)), and "the combined irregularities" that "*clearly* resulted in an *inadequate price*," (*id.* at 9-10) (emphases added)).

Tennessee courts "do not set aside foreclosures lightly." *Young v. Bank One, N.A.*, No. M2003-01359-COA-R3-CV, 2004 Tenn. App. LEXIS 616, at *3 (Tenn. Ct. App. Sept. 20, 2004). A plaintiff seeking such extraordinary relief in Tennessee may no longer rely on the inadequacy

of a foreclosure sale price, but rather "must show 'some evidence of irregularity, misconduct, fraud or unfairness on the part of the trustee or mortgagee.'" *See id.* (quoting *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn. 1984)). We turn now to each of the four asserted bases for Beasley's wrongful foreclosure claim.

### 1. *Statutory notice*

Beasley argues that "he never received notice of the date and place of the foreclosure sale and that the date and place was postponed more than 30 days without notice of re-scheduling in violation of [Tenn. Code Ann.] §[ ]35-5-101(f)(2) and (3)." (Appellant's Br. at 9). Wells Fargo does not dispute this contention. (*See* Appellee's Br. at 21-23).

As the district court properly recognized, Tennessee law privileges contractual, rather than statutory, bases for wrongful foreclosure claims: "[f]ailure to comply with the *statute* . . . does not provide a basis for setting aside a foreclosure sale." *Beasley*, 2017 U.S. Dist. LEXIS 124256, at *15 (citing Tenn. Code Ann. §§ 35-5-106; *EverBank*, 2015 Tenn. App. LEXIS 11, at *1); *see also* Tenn. Code Ann. § 35-5-106 ("Should the . . . person making the sale, proceed to sell without pursuing the provisions of this chapter, the sale shall not, on that account, be either void or voidable."); *Fannie Mae v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 Tenn. App. LEXIS 359, at *19 (Tenn. Ct. App. June 24, 2008).

"Strict compliance" is required, in contrast, "with the advertisement and notice terms as provided *in the deed of trust*." *Robilio*, 2008 Tenn. App. LEXIS 359, at *18 (citing *Henderson v. Galloway*, 27 Tenn. 692, 695-96 (Tenn. 1848) (emphasis added). Beasley does not argue that the Foreclosure Sale violated the terms of the Deed of Trust, nor even refer to that instrument. (*See* Appellant's Br. at 9). Therefore, this ground for the wrongful foreclosure claim is unavailing.

### 2.      *Inadequate Sale Price*

Beasley argues that his wrongful foreclosure claim is also supported by the Foreclosure Sale price, which he claims was "barely half of the fair market value" of the Property.  (Appellant's Br. at 9).  A presumption under Tennessee law gives "conclusive effect to the price produced through [a] foreclosure sale, '[e]ven where the sale price is shockingly disproportionate to the actual value of the Property.'"  *Greenbank v. Thompson*, No. E2010-00160-COA-R3-CV, 2010 Tenn. App. LEXIS 806, at *17 (Tenn. Ct. App. Dec. 29, 2010) (quotation omitted) (second alteration in original).  To overcome the presumption, "a debtor may offer evidence about the fair market value of the property at the time of the sale" to show the "gross[] inadequa[cy]" of the sale price."  *Id.* (citation omitted); *but see Holt*, 688 S.W.2d at 416 (requiring irregularities or misconduct apart from, and contributing to, inadequate price).

Beasley has furnished no evidence as to "the fair market value of the" Property at the time of the Foreclosure Sale.  *See Greenbank*, 2010 Tenn. App. LEXIS 806, at *17.  Instead, he offers conclusory assertions that the manner in which Wells Fargo conducted the sale "clearly resulted in an inadequate price," (Appellant's Br. at 9-10), and that the sale price was "barely half" of fair market value, (*id.* at 9), among others.  As noted by the district court, accepting Beasley's asserted figure of $175,000 for the Property's fair market value, the sale price "was closer to 60%." *Beasley*, 2017 U.S. Dist. LEXIS 124256, at *13.  Even at a lower sale price, the Tennessee Supreme Court has remarked that it would take "a delicate conscience" indeed to be "shocked" by a foreclosure sale at "fifty percent of [a property's] fair value."  *Holt*, 688 S.W.2d at 416.

In pointing to the Foreclosure Sale price as evidence of "irregularity, misconduct, fraud or unfairness," Beasley runs into another problem—circularity.  In *Holt*, the Tennessee Supreme Court held that to justify setting aside a foreclosure sale, a plaintiff must offer "evidence of

irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that *caused or contributed to* an inadequate price." *Id.* at 416 (citing *Jinkins v. Chambers*, 622 S.W.2d 614 (Tex. App. 1981); *Swindell v. Overton*, 302 S.E.2d 841 (N.C. 1983)) (emphasis added). Since the plaintiff must show that the inadequate sale price was caused by "irregularity, misconduct, fraud, or unfairness," the sale price itself cannot constitute the irregularity or misconduct. *See id.* The Foreclosure Sale price, therefore, does not support Beasley's wrongful foreclosure claim.

### 3. *Contractual Cap on Wells Fargo's Entitlement to Foreclosure Proceeds*

Beasley further argues that it was "ironic[]"—by which we understand him to mean "suspicious"—that the foreclosure sale price of $100,000 was "the exact amount" of the cap on Wells Fargo's entitlement to foreclosure proceeds under the Subordination Agreement with SBA. (Appellant's Br. at 9). The district court found this argument unavailing, reasoning that "the Deed of Trust specifically authorized" Wells Fargo to bid on and buy the Property at a non-judicial foreclosure sale. *Beasley*, 2017 U.S. Dist. LEXIS 124256, at *13-14.

Beasley cites no case law, nor has this Court's research uncovered any such authority, that would raise a presumption of "irregularity, misconduct, fraud or unfairness" based upon a lender's carrying out a non-judicial foreclosure sale expressly contemplated by the deed of trust for the property in question. (*See* Appellant's Br. at 8-9).

### 4. *Sale During Pendency of Earlier Action*

Finally, Beasley posits as further evidence of the "irregularity, misconduct, fraud, or unfairness" allegedly attendant upon the Foreclosure Sale, that said sale "was conducted during the pendency of a federal lawsuit challenging Wells Fargo's right to foreclose[.]" (Appellant's Br. at 9).[7] The district court found this argument without merit, noting the absence of any "injunction

---

[7]*See supra* note 3 and accompanying text.

or . . . other legal prohibition" on Wells Fargo's holding the sale. *Beasley*, 2017 U.S. Dist. LEXIS 124256, at \*14. Beasley cites no case law, nor has our research uncovered any, for the proposition that the existence of a pending legal action regarding the foreclosure of a property, without more, deprives a lender of the right to foreclose on that property. (Appellant's Br. at 9-10).

Beasley has failed to provide evidence of "irregularity, misconduct, fraud, or unfairness" on the part of Wells Fargo such as would warrant setting aside the Foreclosure Sale of the Property. *See Holt*, 688 S.W.2d at 416. The district court therefore did not err in finding that Wells Fargo was entitled to judgment in its favor as a matter of law on Beasley's wrongful foreclosure claim, in relation to Beasley's prayer that the court set aside the Foreclosure Sale.

### III.    Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.