(1) A person[2] who knowingly distributed, or knowingly participated in the *811 chain of distribution of, an illegal drug that was actually used by the individual drug user [underlying the case]; [or]
(2) A person who knowingly participated in the illegal drug market, if:
(A) The place of illegal drug activity by the individual drug user is within the illegal drug market target community of the defendant;
(B) The defendant's participation in the illegal drug market was connected with the same type of illegal drug used by the individual drug user; and
(C) The defendant participated in the illegal drug market at any time during the individual drug user's period of illegal drug use.
Tenn. Code Ann. § 29-38-106(b). " 'Illegal drug market' means the support system of illegal drug related operations, from production to retail sales, through which an illegal drug reaches the user." Tenn. Code Ann. § 29-38-104(2).
As the plaintiffs point out, the TDDLA expressly premises liability only on actions related to a drug the distribution of which is illegal under Tennessee law. See Tenn. Code Ann. § 29-38-104(1). If, hypothetically, Tennessee were to elect not to prohibit the distribution of some drug, the distribution of which was prohibited by federal law, then a plaintiff could not sue for damages related to that drug under the TDDLA; that hypothetical drug would not meet the definition of "illegal drug" set out in the Act. As a practical matter, Tennessee law and federal law impose overlapping prohibitions on distribution and possession of certain drugs, but, under the TDDLA, that overlap does not matter. If a plaintiff cannot show a violation of Tennessee law, all the federal violations in the world will not be enough to create liability. By the same token, if a drug is illegal to distribute in Tennessee, TDDLA liability can attach regardless of federal policy.
Under Tennessee law, opioid medications are Schedule II controlled substances. Tenn. Code Ann. § 39-17-408(b)(1). Distribution of a controlled substance, at least generally speaking, is unlawful pursuant to Tenn. Code Ann. § 39-17-417. Tennessee's statutes defining drug offenses in the state recognize an exception, however, if "the person lawfully possessed the controlled substance as otherwise authorized by this part and title 53, chapter 11, parts 3 and 4." Tenn. Code Ann. § 39-17-427. The cited parts of title 53 contain Tenn. Code Ann. §§ 53-11-301 to -452, governing "persons[3] who may legally dispense controlled substances" and the "manufacture, distribution, dispensing, warehousing of, and the provision of logistics services for controlled substances within this state." Tenn. Code Ann. § 53-11-301. Those provisions include express requirements for when and how opioids may be dispensed, Tenn. Code Ann. § 53-11-308, and a prohibition on "distribut[ing] or dispens[ing] any controlled substance for any purposes other than those authorized by and consistent with the person's professional or occupational licensure or registration law, or to distribute or dispense any controlled substance in a manner prohibited by the person's professional *812 or occupational licensure or registration law," Tenn. Code Ann. § 53-11-401(a)(1).
That latter provision is the one most likely to give rise to a federal issue in this case. Whether an entity's distribution of opioids in Tennessee is lawful depends on whether the distributor is acting consistently with its "professional or occupational licensure or registration law." The CSA provisions and regulations cited in the plaintiffs' Second Amended Complaint are part of the federal registration scheme for manufacturers and distributers of controlled substances found in 21 U.S.C. § 823. Tenn. Code Ann. § 53-11-401(a)(1) does not specifically say that the federal CSA registration law is one of the laws with which a distributor or manufacturer must comply, but construing the statute as such would be consistent with its purpose and its plain language. The plaintiffs' inclusion of the alleged CSA violations in their Second Amended Complaint is consistent with their reliance on such a theory. Accordingly, the plaintiffs have raised one theory of liability that, through multiple layers of state law, ultimately does incorporate federal requirements.
Even if there is some federal law lurking in part of the plaintiffs' Second Amended Complaint, however, jurisdiction can only arise if that federal issue is "necessarily raised" and "substantial." Some courts have suggested that "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when every legal theory supporting the claim requires the resolution of a federal issue." Desai v. CareSource, Inc. , No. 3:18-CV-118, 2019 WL 1109568, at *3 (S.D. Ohio Mar. 11, 2019) (quoting Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc. , 111 F.Supp.3d 731 (E.D. Va. 2015) ). Insofar as that is the test, the defendants have plainly failed to meet it. While a CSA violation may be one way for some of the defendants to be held liable under the TDDLA, it is one of many that the plaintiffs have alleged, and others rely wholly on state law. Moreover, the plaintiffs allege similar, overlapping registration requirements under Tennessee law. See Tenn. Code Ann. §§ 53-11-302 to -303; Tenn. Comp. R. & Regs. 1140-02-.01 to - 03-.17 ; Tenn. Comp. R. & Regs. 1140-09-.01 to - .06. Ultimately, then, a CSA violation is just one alternative way for the plaintiffs to make their case, and, if they do make out a claim that amounts to a CSA violation, that CSA violation may well turn out to be entirely redundant of state law violations. See New Mexico ex rel. Balderas v. Purdue Pharma L.P. , 323 F. Supp. 3d 1242, 1252 (D.N.M. 2018) (remanding case where state-law claims could be based on either CSA or federal obligations); W. Va. ex rel. Morrisey v. McKesson Corp. , No. CV 16-1772, 2017 WL 357307, at *8 (S.D.W. Va. Jan. 24, 2017) (remanding case because federal law was not "the only possible source of a putative duty to avoid filling suspicious orders" for opioids).
Even if one applies the "necessarily raise" requirement less stringently, the relatively limited role of the CSA in the plaintiffs' case undermines any argument that the federal issue raised is, in the context of this case, substantial. The Supreme Court has held the mere "presence of a claimed violation of [a federal] statute as an element of a state cause of action" does not necessarily present a federal issue that is sufficiently " 'substantial' to confer federal-question jurisdiction." Merrell Dow , 478 U.S. at 814, 106 S.Ct. 3229. The substantiality analysis looks to four factors: "(1) 'whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute'; (2) 'whether the federal question is important (i.e. not trivial)';
*813 (3) 'whether a decision on the federal question will resolve the case (i.e. the federal question is not merely incidental to the outcome)'; and (4) 'whether a decision on the federal question will control many other cases (i.e. the issue is not anomalous or isolated).' " Cornell , 908 F.3d at 1015 (quoting Mikulski v. Centerior Energy Corp. , 501 F.3d 555, 570 (6th Cir. 2007) (en banc)). In a vacuum, the question of when a distributor is in compliance with the CSA registration scheme is an important one, and the sheer number of defendants in this case (and opioid cases pending) suggests that these issues are not anomalous. There is, however, little basis for concluding that a decision on the federal issue will "resolve the case," because even absent a finding of a CSA violation, the plaintiffs will have numerous other routes for prevailing under the TDDLA.
McKesson argues that the state-law grounds for finding liability under the TDDLA are insufficient because none of the cited provisions specifically includes a duty to report and refuse to fill "suspicious orders." The precise boundaries of the cited Tennessee law, however, present an issue of merits, not jurisdiction. See Uintah Cty., Utah v. Purdue Pharma, L.P. , No. 2:18-CV-00585-RJS, 2018 WL 3747847, at *6 (D. Utah Aug. 7, 2018) (rejecting same argument, regarding Utah law, because the validity of the independent state sources of the duties alleged were merits issues). Moreover, McKesson's argument relies, unconvincingly, entirely on the lack of specific language about "suspicious" orders in the relevant Tennessee statutes. Those statutes, however, merely reach the same issue from a different direction. Tennessee law specifically prohibits the distribution of opioid medications for improper purposes. Tenn. Code Ann. § 53-11-401(a)(1). A violation of that provision precludes a party from relying on the Tenn. Code Ann. § 39-17-427 exception to the prohibition on distribution of controlled substances, which, in turn, renders the drugs "illegal" for purposes of the TDDLA, Tenn. Code Ann. § 29-38-104(1), at least as it is being interpreted by the plaintiffs. The TDDLA attributes liability to a "knowing" distribution or facilitation of the distribution of those illegal drugs. Tenn. Code Ann. § 29-38-106(b). The question of just how "suspicious" an order has to be before a pharmacist or distributor can be treated as "knowingly" in violation of state law may be a thorny one, but there is no reason to think that the lack of the specific word "suspicious" in the relevant statutes confers some kind of blanket immunity. See Balderas , 323 F. Supp. 3d at 1251 (remanding case despite the fact that the relevant state-law provisions contained no specific "requirement compelling the Distributor Defendants to halt suspicious orders").
Numerous other opioid-related cases involving purely state-law prohibitions have been remanded for similar reasons as those presented by the plaintiffs. See In re National Prescription Opiate Litig. , No. 1:17-md-2804, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018) ; Morrisey , 2017 WL 357307 ; City of Reno v. Purdue Pharma, L.P. , Case No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018) ; Del. ex rel. Denn v. Purdue Pharma, L.P. , Case No. 1:18-383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018) ; Uintah Cty. , 2018 WL 3747847, at *7 ; Weber Cty., Utah v. Purdue Pharma, L.P. , No 1:18-cv-00089-RJS, 2018 WL 3747846, at *8-9 (D. Utah August 7, 2018) ; Balderas , 323 F.Supp.3d at 1252. As those courts have recognized, the fact that opioid abuse is an issue of national importance that is addressed, to some degree, by federal law in no way undermines the power of states to craft independent responses that do not rely on federal law to impose liability. When a *814 state has done so-as Tennessee has done here (by the plaintiffs' theory of the case)-then the appropriate forum for such causes of action are state courts, unless a filing or removing party can establish a recognized basis for federal jurisdiction. Because McKesson has not done so, this court will remand the case.
2. Consent of All Defendants
Moreover, even if jurisdictional issues were not fatal to the removal, McKesson's decision to remove the case without the express consent of all defendants was procedurally improper and would independently warrant a remand. "The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or ... consent to the removal." Brierly v. Alusuisse Flexible Packaging, Inc. , 184 F.3d 527, 533 n.3 (6th Cir. 1999). The plaintiffs have identified four defendants who did not consent to removal: Paul Haskins, David Florence, Lynnville Family Medical Center, LLC ("LFMC"), and the Center for Advanced Medicine, LLC ("CAM"). McKesson argues that three of those defendants-Florence, Haskins, and LFMC-were not properly served and that the fourth, CAM, is a nominal defendant whose consent was not required because it is a defunct business entity.
With regard to at least one of the allegedly unserved defendants, however-Haskins-McKesson seemingly concedes that it does not actually have any direct evidence that he was not served when the action was commenced. (Docket No. 54 at 6 n.4.) A Declaration by one of McKesson's attorneys suggests, at most, that Haskins, when contacted by McKesson's counsel, was "unable to confirm" service and eventually stopped responding to McKesson's requests for consent. (Docket No. 55 ¶ 7.) The plaintiffs, however, have produced a Return of Service suggesting that Haskins was indeed personally served. (See Docket No. 20-1.) The Return of Services states, in a printed header, that it was "Served On: NATHAN PAUL HASKINS," and the private process server has certified, in pen, that the summons was served "by PERSONAL SERVICE AT [address]." (Id. at 1.) McKesson argues that the Return of Service is defective because it violates the requirement that proof of service "shall identify the person served and shall describe the manner of service." Tenn. R. Civ. P. 4.03(a). Specifically, McKesson takes issue with the fact that the section of the form filled out in pen by the process server does not expressly clarify that, as the header suggests, the personal service was on Haskins himself. McKesson cites no Tennessee case law in support of its argument that this supposed technical deficiency rendered service insufficient. Absent more, McKesson has not shown that a lack of service or defective service precluded it from having to obtain consent to removal.
McKesson argues, in the alternative, that Haskins is a nominal defendant with no actual stake in the litigation. A defendant is nominal if his absence would not "put [the plaintiff] at risk of receiving inadequate relief." Beasley v. Wells Fargo Bank, N.A. for Certificate Holders of Park Place Sec., Inc. , 744 F. App'x 906, 915 (6th Cir. 2018) (quoting Thermoset Corp. v. Bldg. Materials Corp of Am. , 849 F.3d 1313, 1318 (11th Cir. 2017) ). Consistently with that approach, several circuits have held that a defendant is nominal if "there is no real basis for liability against that defendant or where that defendant's interests are not genuinely adverse to the plaintiff."
*815 Geiman v. N. Ky. Water Dist. , No. 2:13-cv-177, 2014 WL 12573717, at *5 (E.D. Ky. Jan. 16, 2014) ; see, e.g. , Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co. , 736 F.3d 255, 260 (4th Cir. 2013) ("Nominal means simply a party having no immediately apparent stake in the litigation either prior or subsequent to the act of removal."); Thorn v. Amalgamated Transit Union , 305 F.3d 826, 833 (8th Cir. 2002) (defining nominal defendants as those "against whom no real relief is sought" and holding that nominal defendants need not join or consent to removal (citation omitted)); Shaw v. Dow Brands, Inc. , 994 F.2d 364, 369 (7th Cir. 1993) ("A defendant is nominal if there is no reasonable basis for predicting that it will be held liable."), abrogated in other part by Meridian Sec. Ins. Co. v. Sadowski , 441 F.3d 536 (7th Cir. 2006) ; Farias v. Bexar Cty. Bd. of Trustees , 925 F.2d 866, 871 (5th Cir. 1991) ("To establish that non-removing parties are nominal parties, the removing party must show ... that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court." (citation and internal quotation marks omitted)).
The Second Amended Complaint contains specific allegations against Haskins pursuant to which TDDLA liability could be found, namely that Haskins was an active dealer of hydrocodone for illegal purposes, for which he was charged, convicted via a guilty plea, and sentenced to a suspended sentence of incarceration and supervised probation (which he eventually violated, resulting in an order to serve 150 days in jail). (See Docket No. 1-3 ¶¶ 425-28, 653-54, 676.) He is, therefore, genuinely adverse to the plaintiffs and potentially liable for damages. Moreover, it is clear that the corporate defendants intend to defend themselves aggressively in this litigation, and there can be little doubt that their defenses will include the argument that the true parties responsible for opioid drugs finding their way onto the illegal market are low-level, criminal dealers such as Haskins. It is hard to imagine why McKesson should be permitted to choose its preferred forum for litigation by arguing that Haskins is a mere incidental entity, only to heap all culpability onto him and others like him when the parties reach the merits stage.
McKesson argues that Haskins is nevertheless a nominal party because he has, so far, failed to contest the claims against him, and the plaintiffs have not yet sought an entry of default or discovery from him. Haskins' inaction, however-either because he has simply failed to look after his own interests or because he has made a strategic decision to lie low and attempt to piggyback onto the success of his presumably much wealthier codefendants-does not negate his very real stakes in this litigation. The plaintiffs' decision not to seek an entry of default while so many other claims remain pending, moreover, has no bearing on the nature of the claims that Haskins faces. Accordingly, even if the court concluded that it had jurisdiction, it would remand the case based on the lack of unanimous consent to removal.[4]
C. Attorney's Fees
The plaintiffs argue that they should be granted attorney's fees pursuant to 28 U.S.C. § 1447(c), which permits a court granting a remand motion to "require payment of just costs and any actual *816 expenses, including attorney fees, incurred as a result of the removal." This award is within the court's discretion, and a threshold finding of "bad faith, improper purpose, or vexatious or wanton conduct" by the defendant is not necessary. Morris v. Bridgestone/Firestone, Inc. , 985 F.2d 238, 240 (6th Cir.1993) (citation omitted). Instead, the plaintiff should receive fees and costs "if fair and equitable under all the circumstances." Id. (citation and internal quotation marks omitted). An award of fees is "inappropriate where the defendant's attempt to remove the action was fairly supportable." Bartholomew v. Town of Collierville , 409 F.3d 684, 687 (6th Cir. 2005) (citation and internal quotation marks omitted).
The court declines to award attorney's fees. While the court was ultimately unpersuaded by McKesson's assertion of federal jurisdiction, the complex interrelationship of state and federal laws in this area-along with the plaintiffs' decision to include express allegations of CSA violations in their Second Amended Complaint-provided McKesson a fair argument for federal jurisdiction. Moreover, McKesson's difficulties in obtaining consent from all defendants were not the result of a lack of trying, and it was not unreasonable to hope that the court might conclude that the lack of consent from Haskins was, in light of the circumstances, excusable. Ultimately, it is, in the view of the court, fair and equitable to allow the individual parties to shoulder their respective attorney's fees at this stage.
CONCLUSION
For the foregoing reasons, the Moving Defendants' Joint Motion to Stay Proceedings (Docket No. 29) is hereby DENIED , the plaintiffs' Motion to Remand (Docket No. 18) is GRANTED on the merits and DENIED with regard to their request for attorney's fees, and this case is REMANDED to the Circuit Court of Cumberland County. Pursuant to JPML Rule 7.1(g), McKesson is ORDERED to transmit a copy of this Memorandum & Order to the JPML and inform the JPML that the case has been remanded.
It is so ORDERED .

Under the TDDLA, " '[p]erson' means an individual, governmental entity, corporation, firm, trust, partnership, or incorporated or unincorporated association, existing under or authorized by the laws of this state, another state, or foreign country." Tenn. Code Ann. § 29-38-104(11).

The definition of "person," under Tennessee's food, drugs, and cosmetics laws, "includes an individual, partnership, corporation[, or] association." Tenn. Code Ann. § 53-1-102(26).

The court's focus on Haskins should not be construed as an acceptance of McKesson's arguments regarding the other three parties cited by the plaintiffs as not having consented to removal. Rather, because Haskins' lack of consent was sufficient to render the removal improper, the court has declined to engage in redundant, fact-intensive inquiries regarding the other non-consenting defendants.